KLAVENS, ET UX. *v.* SIEGEL, ET UX.

[No. 179, September Term, 1969.]

*Decided January 12, 1970.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*Morton H. Perry* for appellants.

*Bayard Z. Hochberg* for appellees.

SINGLEY, J., delivered the opinion of the Court.

In March 1968 the Siegels entered into a contract to purchase the Klavens' residence in Summit Park, Baltimore County. The contract provided that the purchase price was $23,500 for a leasehold interest, subject to a ground rent of $120.00; for settlement on or before 30 July 1968; described the property only as "2415 Lightfoot Drive"; and contained the usual provision that title was to be good and merchantable.

In May of 1968 the Siegels, who planned to build an addition to the house, engaged the engineering firm of Matz, Childs and Associates to make a survey and prepare the perimeter description which would be needed

in connection with a petition for a rear and side yard variance which the Siegels proposed to file with the Baltimore County Zoning Commissioner. Incident to the making of the survey, it was discovered that the Klavens' driveway encroached on an adjoining lot. The encroachment, which was 4.9 feet wide where the driveway entered Lightfoot Drive, extended for a length of 28 feet, gradually narrowing in width.

Negotiations were entered into by the Siegels and the Klavens in an effort to resolve the difficulty, but proved, for reasons now unimportant, to be fruitless. The Siegels, advised by their title company that an unqualified policy of title insurance would not be issued, declined to make settlement and demanded a return of the $3,000 deposit which they had made. The Klavens declared the deposit forfeited, and the Siegels brought suit for damages for breach of contract in the Circuit Court for Baltimore County. From a judgment of $3,200 with interest and costs entered on a jury verdict in the Siegels' favor, the Klavens have appealed.

Both parties concede that merchantability of title is an issue in the case. The Klavens assign three reasons why the judgment should be reversed: (i) the defect in title was not sufficiently substantial to adversely affect merchantability; (ii) the court erred in excluding evidence of merchantability; (iii) the court erred in admitting the testimony of an employee of the Siegels' engineers, because he had no personal knowledge of the facts as to which he testified.

(i)

The Klavens' contention that the defect was not sufficiently substantial to have an adverse effect on merchantability is simply another way of saying that there was insufficient evidence to take the case to the jury. The Klavens' motion for a directed verdict at the end of the Siegels' case was denied. It was not renewed at the end of the entire case. There were no exceptions to the court's instructions. As this Court, speaking through Judge Mar-

bury, said in *Rockville Corp. v. Rogan*, 246 Md. 482, 484-85, 229 A. 2d 76 (1967) :

> "There is nothing before this Court to review. After making its motion for a directed verdict at the close of appellees' case, which motion was denied, appellant offered evidence to support its theory of the case and to rebut the evidence presented by appellees. The motion for directed verdict was withdrawn by the appellant's presentation of evidence. Maryland Rule 552 b. *Schmidt v. Millhauser*, 212 Md. 585, 130 A. 2d 572; *Smith v. Carr*, 189 Md. 338, 56 A. 2d 151. At the close of all the evidence appellant made a motion for a directed verdict without stating the grounds therefor, as he had done previously for the motion made at the close of the evidence offered by appellees. [citing cases]. A party has the obligation to state for the record the grounds of his motion for a directed verdict in order to inform the court and the counsel for the non-moving party. * * * The second motion was defective, and having failed to properly renew the first motion and the reasons therefor, appellant can not now rely upon either on appeal. Appellant also failed to object to any instructions given the jury. Since appellant offered evidence after making its motion for a directed verdict at the close of appellees' testimony, but failed to properly renew the motion at the close of all the evidence or to object to instructions with reference to the issues raised in the trial, the rulings on the motions and the instructions to the jury became the law of the case and the questions raised by the appellant are not properly before this Court for decision."

This has been quoted with approval in *Jones v. Federal Paper Board Co.*, 252 Md. 475, 488-89, 250 A. 2d 653

(1969) and in *Glover v. Saunders,* 252 Md. 102, 105-06, 249 A. 2d 156 (1969) and is certainly apposite here.

We are constrained to note in passing, however, that there was evidence from which the jury could, and probably did find that the Klavens lot was irregularly shaped and was a little less than a quarter-acre in area; that the driveway provided the only means of vehicular or pedestrian access to the house; that the driveway was 133-1/5 inches wide where it entered Lightfoot Drive, and that the encroachment was 58¾ inches at this point. If Mr. Siegel had been denied use of that part of the drive which encroached, he would have been left with a driveway 74½ inches wide. He testified that both of his cars were wider than this.

### (ii)

The Klavens say that the court erred in excluding testimony as to merchantability. Mr. Klavens was asked on direct examination:

> "All right, without giving me any details, no names or amounts, has the property been subsequently sold?"

There was an objection, which was sustained. No proffer was made. Without considering the Siegels' contention that in the absence of a proffer, nothing was preserved for Appellate review, *Fowler v. Benton,* 229 Md. 571, 185 A. 2d 344 (1962), it is manifest that the court's ruling was not prejudicial to the Klavens.

Assuming that the question is properly before us, we would think the testimony was properly excluded. It seems to be conceded that the court below had before it, as a result of a pretrial motion, some of the facts which would have been included in the Klavens' proffer, had one been made, and other evidence which might have been offered in rebuttal, had the testimony been admitted: that 2415 Lightfoot Drive had been sold for $22,000 in December 1968, six months after the Siegels had refused to settle; that the title policy issued to the subsequent pur-

chasers contained the same exception which was the cause of the Siegels' refusal to consummate their purchase; and that the subsequent purchasers had been given a letter of indemnity from the Klavens, which the Siegels declined to accept.

As we see it, evidence of the subsequent sale under such circumstances was not material to the issue of merchantability. It is axiomatic that anything can be sold at *some* price. The fact that someone would buy the property for $22,000 if he were indemnified against a claim which might arise from the encroachment does not make unreasonable the Siegels' refusal to buy for $23,500 the same property without being protected from a possible lawsuit in a manner acceptable to them.

(iii)

Over an objection which we will regard as adequate for the purpose of this opinion, the court permitted Norman Herman, an employee of Matz, Childs and Associates to testify from field notes found in the files of his firm, which he had not personally compiled or prepared. The Klavens say this was error. We have held otherwise. When an identical question was raised in *Warczynski v. Barnycz*, 208 Md. 22, 228-30, 117 A. 2d 573 (1955) Chief Judge Brune, speaking for the Court, said:

> "The appellees produced as a witness Mr. Louis Evans, a surveyor who was in the employ of a registered surveyor, Mr. Vernon C. Lutz. Mr. Evans was permitted to introduce into evidence and to testify with regard to a plat prepared by Mr. Lutz's office and also with regard to field notes of a survey upon which the plat was based. The witness himself had not made the plat nor had he participated in making the actual survey. The plat was authenticated by the signature of Mr. Lutz, which Mr. Evans identified. Mr. Lutz's absence was due to illness. The chief surveyor in charge of the party which

made the survey, who was the individual who made the field notes, was also unavailable as a witness because he had moved out of the State.

"The witness had been engaged in surveying work for thirteen years and had been in the employ of Mr. Lutz for four years. He testified that the survey had been made by individuals employed by Mr. Lutz's office, that the field notes were made in the ordinary course of business, that the plat was prepared by being computed and plotted from the field notes, and that the plat was prepared under the supervision of Mr. Lutz and was signed by him.

"We think that the witness was sufficiently qualified as an expert to interpret the plat and the field notes. He met the test stated in *Refrigerating Co. v. Kreiner,* 109 Md. 361, 71 A. 1066, where the Court stated: 'It must be shown that the witness possesses such intelligence and such familiarity with the subject as in the sound discretion of the court will enable him to express a well-informed opinion in regard thereto.' See also *Wightman v. Campbell,* 217 N. Y. 479, 112 N. E. 184, in which the appellant objected to the admissibility of the testimony of a surveyor who testified how he had located certain lines with the aid of field notes made in the year 1851 by a surveyor then deceased who had surveyed the property. The Court said: 'Field book entries made by a deceased surveyor for the purpose of a survey on which he was professionally employed, are admissible in evidence as being made in the discharge of professional duty. * * * If the proper foundation had been laid for the introduction of the notes in evidence, as easily might have been done by showing that they were made within the scope of professional employment, and the notes put into evidence, the witness, himself a surveyor and competent to

interpret them, could have testified therefrom as to the location of boundary lines of the Taylor farm and the evidence would have been entirely proper.'

"The records from which Mr. Evans testified were shown to have been made or kept in the regular course of a business or profession, and as such they were admissible as evidence under Code (1951), Article 35, Section 68 [now Art. 35, § 59]. *Bethlehem-Sparrows Point Shipyards, Inc. v. Scherpenisse*, 187 Md. 375, 50 A. 2d 256; *Frush v. Brooks*, 204 Md. 315, 104 A. 2d 624; *Shirks Motor Express v. Oxenham*, 204 Md. 626, 106 A. 2d 46."

We find no reason to disturb the result reached below.

*Judgment affirmed, costs to be paid by appellants.*