1169

Peggy O. HENDERSON, Appellant v. ST. FRANCIS COMMUNITY HOSPITAL, CRS Sirrine, Inc., and Snoddy & McCulloch Associates, Inc., Respondents.

(369 S. E. (2d) 652)

Court of Appeals

*D. Denby Davenport* and *Sally G. Young* both of *Davenport & Yacobi*, Greenville, *for appellant.*

*Jack D. Griffeth* of *Love, Thornton, Arnold & Thomason, Donald A. Harper* of *Haynsworth, Perry, Bryant, Marion & Johnstone*, and *James D. Brice* of *Rainey, Britton, Gibbes & Clarkson*, Greenville, *for respondents.*

Heard March 23, 1988.

Decided May 23, 1988.

Goolsby, Judge:

This is a slip and fall case. The jury returned a verdict in favor of Peggy O. Henderson against St. Francis Community Hospital and CRS Sirrine, Inc., in the amount of $75,000 actual damages. Henderson appeals, questioning the grant of St. Francis' and Sirrine's motions for judgment notwithstanding the verdict and for new trial and the denial of her motions for judgment notwithstanding the verdict and for new trial against Snoddy & McCulloch Associates, Inc. We affirm.

On January 30, 1985, after visiting a patient in St. Francis in Greenville County and while crossing the hospital's parking lot during the daylight hours and searching for the steps to a lower parking level, Henderson stepped on a sweetgum ball, turned her foot, and fell. The fall fractured her left wrist and caused other personal injuries. The sweetgum ball apparently had fallen from a sweetgum tree planted in the median between the parking level where Henderson fell and the parking area where Henderson parked her car.

The sweetgum tree had been in place approximately 15 years. Motor vehicles improperly parked in a marked but unprotected no-parking zone blocked Henderson's view of the steps that led to the lower parking area.

Sirrine designed St. Francis' original parking lot in 1969. It also provided landscape architectural services for St. Francis when it prepared in 1983 a planting plan for an addition to St. Francis' parking lot. Snoddy & McCulloch designed St. Francis' parking lot addition in 1982. Henderson's fall occurred in the original parking lot.

I.

We first address Henderson's contention that the trial court erred in granting St. Francis judgment notwithstanding the verdict.

After the verdict, St. Francis moved for judgment notwithstanding the verdict, essentially renewing its earlier motion for directed verdict. *See Pemberton v. Reliance Insurance Co.*, 83 N. C. App. 289, 350 S. E. (2d) 103 (1986); *cf. Taylor v. Bridgebuilders, Inc.*, 275 S. C. 236, 269 S. E. (2d) 337 (1980). The trial court, without reaching the issue of notice,

held St. Francis had not breached its duty of exercising ordinary care to keep its parking lot in reasonably safe condition, declaring that there was an absence of evidence "that the parking lot was not reasonably maintained" and that the mere presence of sweetgum balls upon the parking lot's surface, both when Henderson fell and again five months later, does not establish "ineffective maintenance."

An operator of a parking lot is not liable as an insurer of the safety of persons who enter upon the property as invitees. *Bruno v. Pendleton Realty Co.*, 240 S. C. 46, 124 S. E. (2d) 580, 95 A.L.R. (2d) 1333 (1962); *see Wimberly v. Winn-Dixie Greenville, Inc.*, 252 S. C. 117, 165 S. E. (2d) 627 (1969). A person who visits a patient in the hospital and uses a parking lot maintained by the hospital for the use and convenience of visitors is an invitee. *See* 65 C.J.S. *Negligence* § 63(130) at 907 (1966). A parking lot operator owes invitees using its parking lot the duty of exercising ordinary care to keep the premises in reasonably safe condition. *Bruno v. Pendleton Realty Co.*, *supra;* 65 C.J.S. *Negligence* § 63(129) at 906-07 (1966).

The question, then, is whether the evidence and all its inferences, when viewed, as it must be, in the light most favorable to Henderson and most strongly against St. Francis, establishes that St. Francis failed to take reasonable steps to remove debris, including sweetgum balls, from its parking lot and thereby breached its obligation to keep its premises in a reasonably safe condition for invitees. *Cf. Young v. Meeting Street Piggly Wiggly*, 288 S. C. 508, 343 S. E. (2d) 636 (Ct. App. 1986).

In addition to Henderson's testimony that she found sweetgum balls and other debris when she fell and when she visited the same area five months later, the only other evidence favorable to her on the issue of St. Francis' duty to keep the parking lot in reasonably safe condition is the testimony of Douglas C. Kier, a former vice-president of St. Francis for administration. He testified St. Francis did not have a routine for cleaning the visitor parking lot. He further testified the "grounds-keeping crew ... responsible for parking lot clean-up" used only automated, driver-operated street-sweepers to sweep the parking areas, and, therefore, only cleaned an area of debris when no vehicles were parked in the area.

There is no evidence, however, that this maintenance program was inadequate to keep the parking lot in reasonably safe condition.

The duty owed an invitee by a parking lot operator to ■ exercise ordinary care to keep its parking lot in reasonably safe condition does not require the operator to maintain a continuous sweeping and cleaning operation to remove from the parking lot surface any and all litter that collects thereon, including nuts, fruit, leaves, needles, sticks, and other debris that fall from trees decorating the parking lot. *See Lexington Marketing Authority v. Zappala,* 233 Md. 444, 197 A. (2d) 147 (1964); *Norris v. Belk's Department Store of Dunn, N. C. Inc.,* 259 N. C. 350, 130 S. E. (2d) 537 (1963); *cf. Young v. Meeting Street Piggly Wiggly, supra.* Neither does this duty require the operator to have a regular, more or less unvarying procedure for cleaning its parking lot.

In our view, therefore, the evidence was insufficient ■ to take to the jury the issue of the negligence of St. Francis. *See* Annot., 38 A.L.R. (3d) 10, 55-56 (1971). We do not overlook Henderson's arguments that St. Francis' failure to protect the no-parking area with barriers of some kind and its failure to post signs directing pedestrian traffic presented jury issues regarding whether the parking lot had been defectively designed and whether St. Francis negligently failed to protect walkway areas. These arguments, however, have no merit.

Henderson's fall, which occurred in a parking area of the parking lot and not on the steps in question, was caused by a sweetgum ball that lay on the surface of the parking lot. Her fall was not caused by an improperly parked motor vehicle or by a failure to post a sign.

II.

We next address Henderson's contention that the trial court erred in granting Sirrine judgment notwithstanding the verdict.

Henderson contends Sirrine violated a duty owed her because it failed to advise St. Francis of a maintenance program, on the removal of the sweetgum tree, and of an effective method for protecting the entrance to the stairway. Sirrine's violation of this duty, she maintains, caused her injuries.

Sirrine, however, owed no duty to Henderson. As the record reflects, all work by Sirrine in connection with its contracts with St. Francis had been accepted as complete by St. Francis and the parking lot's alleged defects were neither latent nor concealed. *See Clyde v. Sumerel,* 233 S. C. 228, 104 S. E. (2d) 392 (1958); *Hackley v. Waldorf-Hoerner Paper Products Co.,* 149 Mont. 286, 425 P. (2d) 712 (1967); *Inman v. Binghamton Housing Authority,* 3 N. Y. (2d) 137, 164 N.Y.S. (2d) 699, 143 N. E. (2d) 895, 59 A.L.R. (2d) 1072 (1957); *Sherman v. Miller Construction Co.,* 90 Ind. App. 462, 158 N. E. 255 (1927); *cf. South Carolina Electric & Gas Co. v. Utilities Construction Co.,* 244 S. C. 79, 135 S. E. (2d) 613 (1964).

The trial court, therefore, properly granted Sirrine judgment notwithstanding the verdict.

### III.

Henderson further contends the trial court erred in not granting her motion for judgment notwithstanding the verdict against Snoddy & McCulloch.

We need not consider this issue, however, because Henderson failed, as required by Rule 50(b) of the South Carolina Rules of Civil Procedure, to make a directed verdict motion at the close of all the evidence. 9 C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2537 at 596 (1971). Henderson made her motion for directed verdict after St. Francis and Sirrine closed but before Snoddy & McCulloch presented its evidence. Henderson, however, did not renew her motion after the close of all the evidence.

Clearly, Henderson's motion was premature and improper. *See Jacks v. Townsend,* 228 S. C. 26, 88 S. E. (2d) 776 (1955); *Ringer v. Graham,* 286 S. C. 14, 331 S. E. (2d) 373 (Ct. App. 1985).

We therefore hold that, when a plaintiff, after moving for a directed verdict at the end of the case presented by one defendant, fails to renew his motion at the close of all the evidence, he waives his right to move for judgment notwithstanding the verdict. *Cf.* 5A J. MOORE AND J. LUCAS, MOORE'S FEDERAL PRACTICE para. 50.08 at 50-78 (2nd ed. 1987). "The rule that a judgment

notwithstanding the verdict may not be granted unless the moving party moved for a directed verdict at the close of all the evidence is a strict one." *Id.* at 50-77.

In holding that a premature motion for directed verdict cannot support a motion for judgment notwithstanding the verdict, we note the trial court in no way prevented Henderson from also renewing her directed verdict motion, the trial court never suggested to Henderson that the renewal of the motion would not be necessary to preserve her rights, and the evidence offered by Snoddy & McCulloch following Henderson's unrenewed motion for directed verdict was neither brief nor inconsequential. *See Id.* at 50-79.

## IV.

We find no merit to Henderson's contention that the trial court's granting of St. Francis' and Sirrine's motions for judgment notwithstanding the verdict and for new trial deprived her of her right to a trial by jury guaranteed by Article I, Section 14 of the South Carolina Constitution. *See Neely v. Martin K. Eby Construction Co.,* 386 U. S. 317, 87 S. Ct. 1072, 18 L. Ed. (2d) 75 (1967); *Southern Power Co. v. White,* 92 S. C. 219, 75 S. E. 459 (1912); *Aetna Casualty & Surety Co. v. Yeatts,* 122 F. (2d) 350 (4th Cir. 1941); 5A J. MOORE AND J. LUCAS, *supra,* para. 50.07[1] at 50-61; 6A J. MOORE, J. LUCAS, AND G. GROTHEER, MOORE'S FEDERAL PRACTICE para. 59.05[2] at 59-45 (2nd ed. 1987); 50 C.J.S. *Juries* § 128(c) and (d) at 854 (1947).

## V.

Henderson contends the trial court committed reversible error in excluding a portion of the witness J. D. Martin's testimony regarding certain conditions associated with St. Francis' parking lot when he visited it in May, July, August, and September, 1986. This evidence, Henderson argues, had relevance concerning what the conditions of the parking lot were on January 30, 1985, when she fell. The trial court excluded the evidence on the ground of remoteness.

The admission or exclusion of evidence of prior or subsequent existence as inferring existence at a particular time is within the trial court's discretion. *Tate v. Mauldin,* 157 S. C. 392, 154 S. E. 431 (1930). No abuse of

discretion occurred here. The evidence was, as the trial court found, too remote in time to have probative value.

## VI.

We do not find it necessary to consider Henderson's exceptions that the trial court erred in granting the alternative motions of St. Francis and Sirrine for new trial since we have held the trial court properly granted their motions for judgment notwithstanding the verdict.

We have considered, however, Henderson's argument that the trial court based its grant of St. Francis' and Sirrine's motions for judgment notwithstanding the verdict and for new trial on its own view of the facts rather than on recognized principles of law. We hold this argument has no merit and does not warrant further consideration. *See U. S. Leasing Corp. v. Janicare, Inc.*, 294 S. C. 312, 364 S. E. (2d) 202 (Ct. App. 1988).

Affirmed.

SHAW and CURETON, JJ., concur.