# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Willie Homer Stephens, Guardian ad Litem for Lillian C., a minor, Petitioner,

v.

CSX Transportation, Inc. and South Carolina Department of Transportation, Respondents.

Appellate Case No. 2013-000133

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Hampton County
Carmen T. Mullen, Circuit Court Judge

---

Opinion No. 27587
Heard March 17, 2015 – Filed November 4, 2015

---

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

John Paul Detrick, John E. Parker, Grahame Ellison Holmes, Matthew Vernon Creech, all of Peters Murdaugh, Parker, Eltzroth & Detrick, P.A., of Hampton; and Carl H. Jacobson, of Uricchio, Howe, Krell, Jacobson, Toporek, Theos & Keith, P.A., of Charleston, all for Petitioner.

Ronald K. Wray, II, and Thomas Edward Vanderbloemen, both of Gallivan, White & Boyd, P.A., of Greenville; Jonathan P. Harmon, of McGuire Woods, L.L.P., of Richmond, VA; James W. Purcell of Fulcher Hagler, L.L.P., of Augusta, GA; Andrew F. Lindemann, of Davidson & Lindemann, P.A., of Columbia, and Peden B. McLeod, Sr., of McLeod, Fraser & Cone, L.L.C., of Walterboro, all for Respondents.

---

**JUSTICE BEATTY:**  This negligence action arose out of a collision involving a train and an automobile at a railroad crossing.  Willie Homer Stephens ("Petitioner"), as Guardian ad Litem for his minor granddaughter who suffered a traumatic brain injury while a passenger in her mother's vehicle, filed suit against CSX Transportation, Inc. ("CSX") and the South Carolina Department of Transportation ("SCDOT").  Following a jury verdict in favor of the defendants, Petitioner appealed to the Court of Appeals.  The Court of Appeals affirmed, finding the trial judge did not err in admitting certain evidence, charging the jury, and in denying Petitioner's motions for a directed verdict and judgment notwithstanding the verdict ("JNOV").  *Stephens v. CSX Transp., Inc.*, 400 S.C. 503, 735 S.E.2d 505 (Ct. App. 2012).  This Court granted Petitioner's request for a writ of certiorari to review the decision of the Court of Appeals.  We affirm in part, reverse in part, and remand for a new trial.

## I.      Factual / Procedural History

CSX maintains a railroad track in Hampton County, which passes through the town of Yemassee.  At issue in this case is the passive-grade crossing at Hill Road near state Highway 68.  The crossing has no active traffic-control devices such as lights or gates.  Vehicle traffic is controlled by a stop sign, a stop line, and a cross-buck that is similar to a "Yield" sign as it is an X-shaped sign with the words "Railroad Crossing" in black lettering.

On the afternoon of February 3, 2004, as Tonia Colvin drove down Hill Road towards Highway 68, a CSX train approached the crossing from her right.  Colvin's boyfriend sat in the front passenger seat and her twelve-year-old daughter Lillian sat in the back seat on the right side.  When Colvin reached the railroad crossing, she stopped at the stop sign and then pulled forward to the stop line.  SCDOT had placed the stop sign at a distance of thirty-six feet and the stop line at

a distance of 9.75 feet from the near rail of the railroad track. Colvin testified that she did not hear or see the train before she drove onto the track. She stated that she heard the train's horn when she drove onto the track. Colvin claimed she accelerated to get out of the way, but she could not cross the track before the train struck her vehicle.

Colvin, her boyfriend, and Lillian all sustained injuries in the accident. An emergency responder testified she smelled alcohol at the accident scene. While Colvin was being treated for her injuries at the emergency room, doctors ordered a test of Colvin's blood and urine to determine whether Colvin had alcohol and/or drugs in her system. Medical records revealed that Colvin had opiates in her system and had a blood alcohol content of .018%. Although Colvin denied being impaired at the time of accident, she admitted she consumed two wine coolers the morning of the accident and had taken Darvocet, a muscle relaxer, and cough syrup with codeine.

Lillian's injuries were the most severe as she suffered a traumatic brain injury that required her to be placed in a medically induced coma for approximately one month. After she awoke from the coma, Lillian received extensive physical, occupational, and speech therapy. However, at the time of trial, Lillian still suffered intellectual, behavioral, and physical impairments.

Petitioner instituted an action for negligence against CSX and SCDOT on behalf of Lillian. With respect to CSX, Petitioner primarily alleged that CSX was negligent in failing to sound the train's horn far enough in advance of the railroad crossing and failing to remove trees and other vegetation that obstructed Colvin's view of the railroad track. As to SCDOT, Petitioner alleged that SCDOT was negligent because it failed to properly inspect the railroad crossing and installed the stop sign and the stop line at improper locations.

At trial, Petitioner presented evidence that CSX, in 2000, started a program to improve sight distances for vehicles approaching its passive-grade crossings in South Carolina by removing vegetation at crossings. Several months before the accident, CSX's clear-cutting crew attempted to cut down a line of trees adjacent to the Hill Road crossing, but they were prevented from cutting the trees until a dispute with the purported landowner, Thomas Jackson, was resolved. At the time of the accident, the crossing had been partially cleared. Contrary to Colvin's testimony, other witnesses testified that the view was unobstructed for about 2,000 feet from the stop line at the crossing. Jackson also testified that he was unaware

of any accidents at the crossing in forty years and he never had a problem with trees blocking his view down the railroad tracks.

Petitioner offered Dr. Kenneth Heathington as an expert who testified regarding the safety issues at the Hill Road crossing. While Dr. Heathington acknowledged that there were no reports of prior accidents at the crossing, he opined that CSX did not provide adequate sight distance for a motorist. Dr. Heathington further testified that the stop sign and stop line were placed at an improper distance. Ultimately, Dr. Heathington concluded that the accident would not have occurred had the defendants complied with the established standards of care. In contrast, SCDOT offered evidence that the crossing had been inspected on November 7, 2002, there was no obstruction at the time of the inspection, and the crossing met with the standards for the placement of stop signs and stop lines.

Petitioner also offered evidence that South Carolina law requires that a train's horn be sounded continuously from a distance of at least 1,500 feet from the road until the engine has crossed it.[1] CSX's counsel admitted in his opening statement that the train's engineer did not begin sounding the train's horn at the proper time. The engineer testified that he "believed" he blew the horn on time; however, the train's event recorder revealed that he did not blow the horn until the engine was 1,161 feet from the crossing.

After CSX and SCDOT presented their evidence, Petitioner moved for a directed verdict as to both defendants. With respect to CSX, Petitioner argued that he was entitled to a directed verdict because there was no issue that CSX was "negligent [in] failing to cut the crossing" and "blow the horn as required by law." Petitioner conceded that there were "issues about proximate cause."

Following the denial of his motion, Petitioner presented rebuttal evidence, which included a stipulation with CSX that the data from the train's event recorder was accurate. Petitioner then rested his case without renewing his motion for a directed verdict.

After charging the jury, the judge submitted to the jury a verdict form that contained special interrogatories. The first question on the form asked the jury to determine whether CSX or SCDOT was negligent. The jury answered "NO" as to

---

[1] S.C. Code Ann. § 58-15-910 (1977) (mandating that a bell and whistle be installed on locomotives and sounded at least 1,500 feet from railroad crossing).

both defendants and, as a result, did not answer any of the remaining questions on the verdict form regarding proximate cause or damages.

Petitioner filed a timely post-trial motion in which he moved for JNOV, pursuant to Rule 50(b) of South Carolina Rules of Civil Procedure,[2] on the grounds the trial judge erred in failing to direct a verdict in favor of Petitioner against CSX on the issue of negligence given CSX admittedly failed to: (1) sound the train's horn in accordance with section 58-15-910 of the South Carolina Code; and (2) clear the subject railroad crossing in accordance with its own rules and regulations. Alternatively, Petitioner moved for a new trial on the grounds the trial judge erred in: (1) declining to admit certain evidence; (2) failing to charge the jury with Petitioner's proposed instructions; and (3) charging intervening or superseding cause and inapplicable South Carolina Code provisions. After the judge denied these motions, Petitioner appealed to the Court of Appeals.

In a divided opinion, the Court of Appeals affirmed.[3] *Stephens v. CSX Transp., Inc.*, 400 S.C. 503, 735 S.E.2d 505 (Ct. App. 2012). The court unanimously affirmed the trial judge's denial of Petitioner's motions for directed verdict and JNOV on the ground the issue was not preserved for appellate review. *Id.* at 515-20, 735 S.E.2d at 512-14. The court found that Petitioner's failure to renew his directed verdict motion after he presented evidence in reply waived his right to move for JNOV. *Id.* at 520, 735 S.E.2d at 514.

---

[2] Rule 50(b) provides in pertinent part:

> Whenever a motion for a directed verdict made *at the close of all the evidence* is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. A party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned, such party may move for judgment in accordance with his motion for a directed verdict.

Rule 50(b), SCRCP (emphasis added).

[3] In his appeal to this Court, Petitioner does not challenge the evidentiary rulings by the trial judge or the Court of Appeals' decision on this issue. Accordingly, we have not addressed this portion of the Court of Appeals' opinion.

The court, however, issued a divided opinion with respect to Petitioner's challenges to the trial judge's rulings involving the jury charge. *Id.* at 520-25, 735 S.E.2d at 514-17. Initially, because the jury determined that neither CSX nor SCDOT breached its duty of reasonable care, the majority found it unnecessary to address any ruling on the jury charge "unless it relates to breach of CSX's and DOT's duty of reasonable care." *Id.* at 520, 735 S.E.2d at 514. The majority rejected each of Petitioner's arguments regarding the jury charge. *Id.* at 520-25, 735 S.E.2d at 514-17.

First, the majority found no error in the judge's refusal to give Petitioner's requested jury instructions regarding a railroad company's: (1) liability for injuries occurring at crossings; and (2) duty to exercise added care when approaching and crossing an intersection where vegetation obstructs a motorist's view of an oncoming train. *Id.* at 521, 735 S.E.2d at 515. The majority concluded that the judge's charge adequately covered the substance of the proposed instructions and correctly conveyed to the jury that a motorist and a railroad must exercise due care at a railroad crossing. *Id.* at 522-23, 735 S.E.2d at 515-16.

Second, the majority held that the trial judge did not err in charging: (1) section 56-5-1010 of the South Carolina Code, which requires railroad companies to install and maintain cross-buck signs at crossings; (2) section 58-17-1390, which requires railroad companies to install and maintain signs reading "Railroad Crossing" at crossings; (3) section 56-5-1020, which prohibits unauthorized signals or other devices at crossings; and (4) section 58-15-1625, which authorizes SCDOT to close railroad crossings to public traffic when SCDOT finds the increased public safety of closing the crossing outweighs the inconvenience caused to motorists who will have to take another route. *Id.* at 523-24, 735 S.E.2d at 516. In so ruling, the majority found the charges contained accurate statements of the law and there was evidence to support the trial judge's decision to give each of them. *Id.* at 524, 735 S.E.2d at 516.

Finally, the majority rejected Petitioner's contention that the trial judge erred in charging the jury on section 15-78-60(5) of the South Carolina Code, which immunizes governmental entities from liability for injuries caused by the "exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee." *Id.* at 524, 735 S.E.2d at 516 (quoting S.C. Code Ann. § 15-78-60(5) (2005)). The majority agreed with Petitioner that SCDOT did not present sufficient evidence to prove its discretionary

act immunity claim. *Id.* at 525, 735 S.E.2d at 517. However, it concluded that Petitioner's argument was not preserved because Petitioner raised a different ground on appeal than at trial. *Id.* Specifically, the Court of Appeals found Petitioner failed to argue at trial that SCDOT was not entitled to the immunity defense on the basis SCDOT did not follow an acceptable professional standard in its placement of the stop sign or stop line. *Id.*

The dissent disagreed with the majority's decision regarding the alleged erroneous jury charges. *Id.* at 526-27, 735 S.E.2d at 517-18. While the dissent agreed with the majority that SCDOT failed to present sufficient evidence to entitle it to a charge on discretionary immunity, the dissent found Petitioner was prejudiced because the charge could have confused the jury. *Id.* at 526, 735 S.E.2d at 517. The dissent further found the judge erred in charging the jury on section 56-5-2930, which makes it unlawful for a person to drive a motor vehicle under the influence of alcohol or drugs, but declining to charge section 56-5-2950(G)(1), which provides that a person with a blood alcohol level of .05% or less is conclusively presumed not to be under the influence. *Id.* The dissent also found the trial judge erred in charging CSX's proposed charge, which stated that "It's Always Train Time at the Crossing." *Id.* The dissent believed this instruction could have suggested to the jury that the defendants had lesser duties of care than a motorist. *Id.* at 526, 735 S.E.2d at 518. Ultimately, the dissent would have reversed and remanded for a new trial. *Id.* at 527, 735 S.E.2d at 518.

Following the denial of his petition for rehearing and the rejection of a suggestion for rehearing *en banc*, this Court granted Petitioner's request for a writ of certiorari.

## II.    Discussion

### A.    Motions for Directed Verdict and JNOV

Petitioner contends the Court of Appeals erred in affirming the trial judge's denial of his motions for a partial directed verdict and JNOV. In support of this contention, Petitioner posits that the decision of the Court of Appeals: (1) is contrary to the provisions of Rule 50, SCRCP and is based on case law that does not apply to the procedural posture of the instant case, i.e., where a plaintiff presents rebuttal evidence; (2) constitutes an unconstitutional rule change to existing Rule 50; and (3) is incorrect in light of CSX's admission that it breached its duty to timely sound the train's horn in accordance with section 58-15-910 of the South Carolina Code.

We find the Court of Appeals correctly ruled that Petitioner was precluded from requesting JNOV because he failed to renew his motion for a directed verdict after offering evidence in rebuttal. The text of Rule 50(b) clearly requires renewal of a directed verdict motion as it states the motion should be made after "all" the evidence, which necessarily includes that presented in rebuttal. *See* Rule 50(b), SCRCP (stating, in part, "[w]henever a motion for a directed verdict made at the close of *all the evidence* is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion" (emphasis added)).

This interpretation is consistent with decisions in our state that require strict compliance with the rule. *See, e.g., RFT Mgmt. Co. v. Tinsely & Adams, L.L.P.*, 399 S.C. 322, 331, 732 S.E.2d 166, 170 (2012) (" 'When a party fails to renew a motion for a directed verdict at the close of all evidence, he waives his right to move for JNOV' " (quoting *Wright v. Craft*, 372 S.C. 1, 20, 640 S.E.2d 486, 496 (Ct. App. 2006))); *Henderson v. St. Francis Cmty. Hosp.*, 295 S.C. 441, 369 S.E.2d 652 (Ct. App. 1988) (holding that Rule 50(b) is strictly applied), *overruled on other grounds by* 303 S.C. 177, 399 S.E.2d 767 (1990); *cf. State v. Bailey*, 368 S.C. 39, 43 n.4, 626 S.E.2d 898, 900 n.4 (Ct. App. 2006) (stating, "[i]f a defendant presents evidence after the denial of his directed verdict motion at the close of the State's case, he must make another directed verdict motion at the close of all evidence in order to appeal the sufficiency to the evidence").[4]

Moreover, additional support for this interpretation may be gleaned from decisions in other state and federal jurisdictions that have adopted a rule of procedure similar in text to our state's Rule 50.[5] *See, e.g., Klavens v. Siegel*, 260 A.2d 637 (Md. 1970) (ruling that movant, by offering evidence in rebuttal, withdrew the motion for a directed verdict by the presentation of the evidence); *Spulak v. Tower Ins. Co.*, 559 N.W.2d 197, 201 (Neb. 1997) (holding that "[a]

---

[4] Petitioner contends the cited cases, particularly *Henderson*, are limited to a factual scenario where the defendant fails to renew a motion for a directed verdict after presentation of the defense case. We disagree with Petitioner's interpretation of these cases as we discern no reason, and Petitioner does not offer any, why the same rule would not be equally applicable to a plaintiff who presents evidence in rebuttal.

[5] *See* 25 S.C. Jur. *Rules of Civil Procedure* § 50.2 (2015) ("State Rule 50 substantially conforms to the pre-1991 Federal Rule.").

plaintiff who moves for a directed verdict at the close of the defendant's evidence and, upon the overruling of such motion, proceeds to introduce rebuttal evidence waives any error in the ruling on the motion" when the motion for a directed verdict is not renewed at the close of all the evidence). *See Generally* E. H. Schopler, Annotation, *Practice and Procedure With Respect to Motions for Judgment Notwithstanding or in Default of Verdict under Federal Civil Procedure Rule 50(b) or Like State Provisions*, 69 A.L.R.2d 449 (1960 & Supp. 2015) (collecting state and federal cases addressing proper procedure for procuring a ruling on a motion for JNOV). Accordingly, we affirm the Court of Appeals' interpretation of Rule 50(b) and conclude that it did not constitute a rule change.

Further, despite CSX's admission concerning the untimely sounding of the train's horn and stipulation regarding the accuracy of the data from the train's event recorder, Petitioner waived any argument that he was entitled to a partial directed verdict as to CSX's breach of its duty of reasonable care. Not only did Petitioner fail to renew his motion for a directed verdict at the close of all the evidence, but he also approved a special verdict form that asked the jury to consider *all* elements of his negligence claim, including whether CSX and SCDOT breached their respective duties of care. *See Solley v. Navy Fed. Credit Union, Inc.,* 397 S.C. 192, 214, 723 S.E.2d 597, 608 (Ct. App. 2012) ("When an appellant acquiesces to the trial court's ruling, that issue cannot be raised on appeal."); *see also Lord v. D & J Enters., Inc.*, 407 S.C. 544, 558, 757 S.E.2d 695, 702 (2014) ("To prevail on a negligence claim, a plaintiff must establish duty, breach, causation, and damages.").

## B.    Jury Charges

Petitioner next argues that the Court of Appeals erred in affirming the trial judge's: (1) refusal to charge Petitioner's two requested instructions regarding CSX's duty of care, (2) decision to charge discretionary immunity as to SCDOT, and (3) decision to charge three statutes pertaining to signage at railroad crossings. Additionally, Petitioner asserts the Court of Appeals erred in declining to address his challenges regarding the trial judge's decision to charge: (1) inapplicable statutes, (2) an intervening or superseding cause, (3) CSX's proposed request that "it is always train time at a railroad crossing," and (4) the criminal statute of driving under the influence.

"An appellate court will not reverse the trial court's decision regarding jury instructions unless the trial court committed an abuse of discretion." *Cole v. Raut,* 378 S.C. 398, 404, 663 S.E.2d 30, 33 (2008). "An abuse of discretion occurs when

the trial court's ruling is based on an error of law or is not supported by the evidence." *Id.*

"A trial court must charge the current and correct law." *In re Estate of Pallister*, 363 S.C. 437, 451, 611 S.E.2d 250, 258 (2005). "Ordinarily, a trial judge has a duty to give a requested instruction that correctly states the law applicable to the issues and evidence." *Ross v. Paddy*, 340 S.C. 428, 437, 532 S.E.2d 612, 617 (Ct. App. 2000). However, jury instructions should be confined to the issues made by the pleadings and supported by the evidence. *Baker v. Weaver,* 279 S.C. 479, 482, 309 S.E.2d 770, 771 (Ct. App. 1983). "A trial court's refusal to give a properly requested charge is reversible error only when the requesting party can demonstrate prejudice from the refusal." *Pittman v. Stevens,* 364 S.C. 337, 340, 613 S.E.2d 378, 380 (2005).

When an appellate court reviews an alleged error in a jury charge, it "must consider the court's jury charge as a whole in light of the evidence and issues presented at trial." *Keaton ex rel. Foster v. Greenville Hosp. Sys.,* 334 S.C. 488, 497, 514 S.E.2d 570, 575 (1999) (citations omitted). "If, as a whole, the charges are reasonably free from error, isolated portions which might be misleading do not constitute reversible error." *Id.* "This holistic approach to jury instructions is linked to the principle of appellate procedure that '[a]n error not shown to be prejudicial does not constitute grounds for reversal.' " *Ardis v. Sessions*, 383 S.C. 528, 532, 682 S.E.2d 249, 250 (2009) (quoting *Brown v. Pearson,* 326 S.C. 409, 417, 483 S.E.2d 477, 481 (Ct. App. 1997)).

### 1. Issues Addressed by the Court of Appeals

### a. Trial Judge's Refusal to Charge Proposed Jury Instructions

We find Petitioner cannot demonstrate that the trial judge erred in refusing to charge his Nos. 2 and 3 proposed instructions.[6] Although the judge's charge did

---

[6] Petitioner's proposed instruction No. 2 states:

> A railroad corporation has a duty to maintain its right-of-ways and highway railroad grade crossings in a reasonable safe condition. If a railroad corporation negligently allows vegetation to grow on its right-of-way adjacent to the crossing to such an extent that it obscures or obstructs the vision of the driver of a motor vehicle using the roadway, it is liable to anyone who is injured in a collision, if the

not include the particular verbiage requested by Petitioner, the charge adequately covered the substance of Petitioner's proposed instructions.

In terms of proposed instruction No. 2, the trial judge fully explained the elements of negligence.  The judge also expressly instructed the jury that "a railroad corporation has a duty to maintain a reasonably safe grade crossing," which accurately addressed the railroad's duty and was a correct statement of the law.  As to proposed instruction No. 3, the judge charged the jury that a railroad corporation must use "reasonable and ordinary caution to prevent accidents at such crossing, and this degree of care may be affected by obstructions which prevent the track from being seen as a train approaches."

Further, we reject Petitioner's assertion that the trial judge's refusal to give his proposed instructions effectively placed the duty of care only on the motorist.  Contrary to Petitioner's claim, the judge instructed the jury that a motorist and a railroad corporation have a mutual duty to exercise reasonable care at a railroad crossing.  Specifically, the judge charged that "there is a mutual duty on [the] traveler and [the] railroad to exercise due care" and that "[b]oth the traveler and the company are charged with the same degree of care:  the one to avoid being injured; and the other to avoid inflicting injury."  Consequently, we agree with the Court of Appeals that the trial judge did not err in refusing to charge Petitioner's requested instructions.

Nevertheless, even assuming error, we discern no prejudice to Petitioner as each party's respective duty of care was accurately conveyed to the jury.  *See Chisolm v. Seaboard Air Line Ry.*, 121 S.C. 394, 401, 114 S.E. 500, 503 (1922) ("A railroad company and a traveler on a highway crossing are charged with a mutual duty of keeping a lookout for danger, and the degree of vigilance required of both is in proportion to the known risk; the greater the danger, the greater the care required of both.").

---

obstructing vegetation contributed as a proximate cause to the collision.

Petitioner's proposed instruction No. 3 states:

When vegetation at a railroad crossing is such that it obstructs a motorist's view of an oncoming train, the railroad has a duty to exercise added care in the operation of timing of its train as the train approaches and crosses the crossing.

### b. Discretionary Immunity

Petitioner asserts the Court of Appeals erred in affirming the trial judge's charge on section 15-78-60(5) of the South Carolina Code, which immunizes governmental entities from liability for injuries caused by "the exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee."[7] Petitioner contends the ruling was inconsistent because the Court of Appeals unanimously found that SCDOT failed to present sufficient evidence to entitle it to a jury charge on discretionary immunity, yet still concluded there was no reversible error since Petitioner changed his argument on appeal to include SCDOT's failure to follow professional standards in the placement of the signs at the Hill Road crossing. Petitioner concedes that the phrase "professional standards" was not specifically used in objecting to the discretionary immunity charge; however, he maintains the objection was sufficient to preserve the issue for appellate review.

We agree with Petitioner that his objection was sufficient to preserve the issue for appellate review as Petitioner clearly challenged the judge's instruction on discretionary immunity at the charge conference and cited section 15-78-60(5) in his post-trial motion. *See Buist v. Buist*, 410 S.C. 569, 574-75, 766 S.E.2d 381, 383-84 (2014) ("While a party is not required to use the exact name of a legal doctrine in order to preserve the issue, the party nonetheless must be sufficiently clear in framing his objection so as to draw the court's attention to the precise nature of the alleged error." (citations omitted)).

Although we disagree with the Court of Appeals' error preservation analysis, we agree with its ultimate conclusion to affirm the trial judge. However, we reach this decision on a different basis than the Court of Appeals. Unlike the Court of Appeals, we find SCDOT did in fact present evidence that entitled it to a charge on discretionary immunity.

"To establish discretionary immunity, the governmental entity must prove that the governmental employees, faced with alternatives, actually weighed competing considerations and made a conscious choice." *Pike v. S.C. Dep't of Transp.*, 343 S.C. 224, 230, 540 S.E.2d 87, 90 (2000). "Furthermore, the governmental entity must show that in weighing the competing considerations and

---

[7] S.C. Code Ann. § 15-78-60(5) (2005).

alternatives, it utilized accepted professional standards appropriate to resolve the issue before them." *Id.* (citation omitted).

SCDOT pled the affirmative defense of discretionary immunity in its Answer and offered evidence at trial to support this defense. Specifically, SCDOT witnesses Richard Jenkins, Joel Smith, and Richard Reynolds identified the factors that were considered in the placement of the stop sign and stop line. These witnesses also testified how the positioning of the stop sign was affected by the presence of an access road, driveway, culvert, and fiber optic lines. Additionally, these witnesses opined that the placement of the stop sign and stop line was proper and in substantial compliance with the guidelines provided by the Manual of Uniform System of Traffic-Control Devices ("MUTCD").

Finally, we note that Petitioner has not raised any challenge to the other discretionary immunity provisions charged by the trial judge, which included sections 15-78-60(13) and 15-78-60(15).[8] Thus, even assuming error, we cannot definitively determine that Petitioner was prejudiced because the jury may have based its decision on one of these unchallenged provisions and not section 15-78-60(5). *Cf. Anderson v. Short*, 323 S.C. 522, 476 S.C. 475 (1996) (stating that where a trial judge's decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case).

### c. Statutes Involving Signage and SCDOT's Authority to Close Railroad Crossings

Petitioner argues that the Court of Appeals erred in affirming the trial judge's decision to charge statutes related to the placement of signs at railroad crossings[9]

---

[8] S.C. Code Ann. § 15-78-60(13) (2005) (immunizing governmental entities for liability of a loss resulting from regulatory inspection powers or functions); *id.* § 15-78-60(15) (immunizing governmental entities for liability of a loss resulting from the absence or malfunction of warning devices unless it is not corrected within reasonable time after actual or constructive notice).

[9] *See* S.C. Code Ann. § 56-5-1010 (2006) (requiring railroad companies operating in South Carolina to place and maintain cross-buck signs at crossing of highway and railroad); *id.* § 56-5-1020 (prohibiting placement of unauthorized signs, signals, or traffic-control devices in view of any highway); *id.* § 58-17-1390 (1977) (requiring railroad corporation to maintain signs at crossings with public roads).

and the authority of SCDOT to close unsafe railroad crossings.[10] Petitioner claims these statutes should not have been charged as they were inapplicable and created confusion for the jury.

We agree with the Court of Appeals that the challenged jury instructions correctly stated the law and were applicable to the issues and evidence presented at trial. Sections 56-5-1010 and 58-17-1390 regarding a railroad company's duties to install certain signs at crossings were relevant because Petitioner alleged that CSX was negligent "[i]n maintaining an unreasonably hazardous and unsafe crossing" and "[i]n failing to maintain adequate warning devices at the crossing."

Section 56-5-1020, which prohibits unauthorized signs, signals, or other devices at crossings, was relevant because Dr. Heathington opined that the Hill Road crossing could have been made safer with the installation of active traffic-control devices. Thus, section 56-5-1020, informed the jury that CSX could not legally install active traffic-control devices without SCDOT's authorization. Finally, section 58-15-1625, which authorizes the SCDOT to close unsafe railroad crossings, was relevant to inform the jury that CSX could not of its own accord close the Hill Road crossing.

### 2. Issues Not Addressed by the Court of Appeals

We conclude the Court of Appeals erred in restricting its analysis only to those jury charge issues related to the breach of CSX's and SCDOT's duty of reasonable care. As will be discussed, we find that portions of the judge's charge were erroneous and may have tainted the jury's consideration of the initial question on the special verdict form regarding negligence, particularly where CSX admitted that the train engineer failed to timely sound the train's horn in accordance with section 58-15-910 of the South Carolina Code.[11]

---

[10] *See* S.C. Code Ann. § 58-15-1625 (Supp. 2005) (authorizing SCDOT to eliminate unsafe railroad crossings).

[11] Throughout the appellate proceedings, CSX has argued that there was conflicting evidence as to whether it breached its duty of reasonable care. As a result, CSX maintains that there is evidence to support the jury's determination that it was not negligent. We believe this argument is disingenuous given the admission of CSX's counsel during opening statements that the train's engineer failed to timely sound the train's horn in accordance with section 58-15-910 and the

### a. Statutes Concerning a Driver's Duty to Stop

Petitioner contends the trial judge erred in charging sections 56-5-2330[12] and 56-5-2740[13] concerning a driver's duties at stop signs on intersecting highways because these statutes are inapplicable and conflict with the judge's instruction on section 56-5-2715,[14] which specifically addresses a driver's duty to stop at a railroad crossing that SCDOT has deemed particularly dangerous.

We agree with Petitioner that the trial judge erred in charging sections 56-5-2330 and 56-5-2740. Without dispute, these statutes were irrelevant as neither governs a driver's duty to stop at a railroad crossing. The statutes also conflict with

---

stipulation regarding the accuracy of the data from the train's event recorder. Although CSX did not concede that it breached its duty of reasonable care, the admission of counsel and the stipulation clearly equate to a finding of negligence per se, i.e., breach of duty. *See Fairchild v. S.C. Dep't of Transp.,* 398 S.C. 90, 727 S.E.2d 407 (2012) (recognizing that the violation of an applicable statute constitutes negligence per se). However, as acknowledged by Petitioner, there remained questions of fact as to proximate cause and damages.

[12] *See* S.C. Code Ann. § 56-5-2330(b) (2006) (providing requirements for motorists when they approach a stop sign and stating in part that "every driver of a vehicle approaching a stop sign *shall stop at a clearly marked stop line* but, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it" (emphasis added)).

[13] *Id.* § 56-5-2740 (providing requirements for motorists when they approach a stop sign at a crosswalk and stating, in part, that "[e]very driver of a vehicle approaching a stop sign shall stop before entering the crosswalk on the near side of the intersection or, in the event there is no crosswalk, shall stop at a clearly marked stop line but, if none, then at the point nearest the intersecting highway where the driver has a view of approaching traffic on the intersecting highway before entering the intersection").

[14] *Id.* § 56-5-2715 (authorizing SCDOT to designate "particularly dangerous" railroad crossings and erect stop signs thereat and stating that "[w]hen such signs are erected, the driver of any vehicle *shall stop within fifty feet, but not less than fifteen feet, from the nearest rail of the railroad and shall proceed only upon exercising due care*" (emphasis added)).

the directive of section 56-5-2715 that a driver "shall stop within fifty feet, but not less than fifteen feet, from the nearest rail of the railroad." Had Colvin complied with the general provisions of sections 56-5-2330 and 56-5-2740 and stopped at the stop line, which was located 9.75 feet from the near rail of railroad track, she would have violated the fifteen-foot limit mandated by section 56-5-2715. Given this conflict, we believe the jury could have been confused as to which statutory provisions governed Colvin's duty to stop at the railroad crossing. If the jury applied sections 56-5-2330 and 56-5-2740, it may have deemed Colvin negligent for violating section 56-5-2715. *See Fairchild v. S.C. Dep't of Transp.,* 398 S.C. 90, 727 S.E.2d 407 (2012) (recognizing that the violation of an applicable statute constitutes negligence per se).

In turn, the jury may have concluded that Colvin's negligence superseded any admitted or proven negligence of CSX or SCDOT. *See Gause v. Smithers*, 403 S.C. 140, 150, 742 S.E.2d 644, 649 (2013) ("To exculpate a negligent defendant, the intervening cause must be one which breaks the sequence or causal connection between the defendant's negligence and the injury alleged." (citation omitted)); *Matthews v. Porter*, 239 S.C. 620, 628, 124 S.E. 321, 325 (1962) ("In order to relieve the defendant of responsibility for the event, the intervening cause must be a superseding cause. It is a superseding cause if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury." (citation omitted)). Consequently, we find that Petitioner was prejudiced by the judge's error.

### b. Intervening or Superseding Cause

Next, Petitioner asserts the trial judge erred in charging the law of intervening or superseding cause because any allegation of negligence against Colvin was "foreseeable as a matter of law, and therefore, could not serve as an intervening, superseding cause." Petitioner claims it was foreseeable that a motorist might not stop at the stop line at the Hill Road crossing as that stop line was improperly placed at a location that was too close to the railroad track.

We find Petitioner's argument to be without merit as evidence was presented that any negligence on the part of Colvin was not limited to the issue of the stop line. Rather, there was evidence that even though Colvin stopped at the line, she failed to yield, failed to exercise due care, and admitted to consuming alcohol and prescription medication prior to driving her vehicle. Any of these actions on the part of Colvin, none of which was reasonably foreseeable, could have served as the

intervening cause of the accident. *See Bishop v. Dep't of Mental Health*, 331 S.C. 79, 89, 502 S.E.2d 78, 83 (1998) ("The test by which the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the independent negligent conduct of another is whether the intervening act and the injury resulting therefrom are of such character that the author of the primary negligence should have reasonably foreseen and anticipated them in the light of attendant circumstances."); *Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 467, 494 S.E.2d 835, 844 (Ct. App. 1997) ("For an intervening force to be a superseding cause that relieves an actor from liability, the intervening cause must be a cause that could not have been reasonably foreseen or anticipated.").  Accordingly, we find the charge was proper and supported by the evidence presented at trial.

### c.   "It is Always Train Time at a Railroad Crossing"

Petitioner argues the trial judge erred in charging the jury that "it is always train time at a railroad crossing"[15] because the charge misstates the respective duties of a motorist and the railroad company at crossings.  Petitioner maintains that the charge, coupled with the judge's refusal to charge his proposed instruction No. 9,[16] improperly placed a higher duty of care upon motorists at railroad crossings.

Although the text of this segment of the judge's charge may be found in a series of cases decided in 1936 and 1940,[17] a careful review of these decisions

---

[15]  This portion of the charge states:

> I further charge you it is the law of this state it has been well said that it is always train time at a railroad crossing.  The law regards a railroad crossing as a place of danger.  The very presence of such a crossing is notice to the person approaching or attempting to cross it of the danger of colliding with a passing engine or train.

[16]  Petitioner's proposed instruction No. 9 provides:

> A driver of a motor vehicle is under no absolute duty to stop, look, and listen before going on the track at a railroad crossing, unless the exercise of ordinary care and prudence under all surrounding facts and circumstances requires the adoption of such a course.

[17]  *See, e.g., Bingham v. Powell*, 195 S.C. 238, 245, 11 S.E.2d 275, 278 (1940) ("We are not unmindful of the principles long established by this Court that it is

reveals that the quoted language constitutes dicta and conflicts with case law that correctly assigns a mutual duty to a motorist and a railroad company at railroad crossings. *See Chisolm v. Seaboard Air Line Ry.*, 121 S.C. 394, 401, 114 S.E. 500, 503 (1922) ("A railroad company and a traveler on a highway crossing are charged with a mutual duty of keeping a lookout for danger, and the degree of vigilance required of both is in proportion to the known risk; the greater the danger, the greater the care required of both."). Due to the erroneous charge, the jury may have improperly assigned a higher duty of care to Colvin or shifted the duty of care entirely to Colvin. Accordingly, we find that Petitioner was prejudiced by this error.

### d. Impaired Driving

Finally, Petitioner asserts the trial judge erred in charging the jury section 56-5-2930,[18] the criminal statute involving the charge of driving under the influence ("DUI"), but refusing to charge section 56-5-2950(b)(1)[19] to show that Colvin was presumptively not impaired by alcohol as her blood alcohol content was .018%. Additionally, Petitioner claims the prejudice from the refusal to

---

'always train time at a railroad crossing' and that one approaching must make use of his senses, to the best of his ability under the circumstances, to ascertain the presence or approach of a train and do so in time and place, so far as is reasonably within his control, to be effective[.]"); *Breeden v. Rockingham R.R. Co.*, 193 S.C. 220, 224, 8 S.E.2d 366, 368 (1940) ("It is the duty of a traveler, upon the approach to a railroad crossing of which he is aware, to use due care to observe the approach of trains at said crossing for, as stated in *Robison v. Atlantic Coast Line R. Co.*, 179 S.C. 493, [501], 184 S.E. 96, 100 [1936], 'it is always train time at a railroad crossing.' ").

[18] S.C. Code Ann. § 56-5-2930 (2006) (outlining offense of operating a vehicle while under the influence of alcohol or drugs or a combination of both). We note that this statute has since been amended. Therefore, we cite to the version of the statute in effect at the time of the accident.

[19] *Id.* § 56-5-2950(b)(1) (providing that in a criminal prosecution for violation of section 56-5-2930 an alcohol concentration of .05 or less is conclusively presumed that the person was not under the influence of alcohol). We note that section 56-5-2950(b)(1) is now codified as section 56-5-2950(G)(1). S.C. Code Ann. § 56-5-2950(G) (Supp. 2014).

charge section 56-5-2950(b)(1) was exacerbated by the judge's decision to charge section 15-78-60(20),[20] which led the jury to infer that SCDOT could not be liable for its omissions because of criminal activities committed by Colvin.

Like the dissent in the Court of Appeals' opinion, we are most troubled by this issue. Given the evidence, it was necessary to provide the jury with some type of instruction regarding impaired driving as the emergency responder testified the accident scene smelled of alcohol, Colvin admitted that she consumed alcohol and took prescription medication the morning of the accident, and Colvin's blood test after the accident revealed the presence of opiates. However, because Petitioner presented evidence that Colvin's blood alcohol content was .018%, we find Petitioner was entitled to have the jury instructed on the statutory presumption provided in section 56-5-2950(b)(1). In the absence of this instruction, it is arguable the jury found Colvin was impaired while driving and that this criminal act negated any negligence on the part of CSX and SCDOT. Accordingly, we find Petitioner was prejudiced by the judge's refusal to charge his proposed instruction.

### III.    Conclusion

Based on the foregoing, we affirm the rulings of the Court of Appeals regarding the denial of Petitioner's JNOV motion and the jury charge issues that it addressed. However, we find the Court of Appeals erred in restricting its analysis only to those jury charge issues related to the breach of CSX's and SCDOT's duty of reasonable care. Because portions of the judge's charge were erroneous and prejudiced Petitioner, we reverse and remand for a new trial.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**TOAL, C.J., and HEARN, J., concur. KITTREDGE, J., dissenting in a separate opinion in which PLEICONES, J., concurs.**

---

[20] *Id.* § 15-78-60(20) (2005) ("The governmental entity is not liable for a loss resulting from an act or omission of a person other than an employee including but not limited to the criminal actions of third persons.").

**JUSTICE KITTREDGE:** I respectfully dissent. I would affirm the court of appeals in result. I begin by commending Justice Beatty on his well-written and thorough opinion. I further take no issue with the finding of error concerning the challenged jury instructions related to Tonia Colvin. However, given the verdict form and the jury's determinations that CSX Transportation and the South Carolina Department of Transportation were not negligent in the first instance, I would find the erroneous jury instructions did not prejudice Petitioner.

The Court finds no reversible error in the jury's findings of no negligence against CSX and SCDOT, while finding a new trial is warranted due to jury instructions related to Colvin. The Court even speculates that "the jury may have concluded that Colvin's negligence superseded any admitted or proven negligence of CSX or SCDOT." The jury's findings of no negligence against CSX and SCDOT preclude such speculation. Absent a reversible error in a jury's findings, I believe the law requires a court to give effect to the jury's determinations.

On a final note, this appeal presents the frequent tension between the practical realities of jury deliberations and established legal principles. The established principle at issue here is seen in the jury's threshold findings of no negligence against CSX and SCDOT. As a practical matter, is it possible that the jury ignored the trial court's instructions and allowed its possible view of Colvin's alleged responsibility for the accident to influence the verdict of no negligence against CSX and SCDOT? The answer is, of course, yes. Yet there are compelling policy reasons to resist such speculation and for honoring the agreed-upon verdict form. In sum, because the jury determined that CSX and SCDOT were not negligent, the unrelated erroneous jury instructions should not serve as a basis for granting a new trial.

**PLEICONES, J., concurs.**