7828

MANSON v. DEMPSEY.

1. REAL PROPERTY—TRESPASS—NONSUIT—VERDICT.—There being evidence here from which it may be inferred that defendant's husband acted as her agent in committing the trespasses alleged on plaintiff's land, it was proper to refuse to nonsuit and direction of verdict for defendant.

2. IBID.—ISSUES may be sent to the jury in an action for damages to land. May they be in an action for recovery of specific real property?

3. IBID.—A VERDICT fixing the line between two lots as so far from the wall of a house on one side means the foundation wall, but here the meaning is explained by the evidence to be the foundation wall.
4. IBID.—A VERDICT can be only understood as locating a land line at the point in dispute; that such location would make the whole line crooked, which both parties claimed to be straight, is not material.
5. APPEAL—IBID.—The trial Court on motion for new trial on ground that verdict was excessive having reduced it, this Court will not consider if it is still excessive, there being testimony to support it.

Before GAGE, J., Richland, November term, 1908. Affirmed.

Action by C. H. Manson *et al.* against Lydia A. Dempsey. From judgment for plaintiff, defendant appeals.

*Mr. Frank G. Tompkins,* for appellant, cites: *Where a special verdict is indefinite or vague it should be set aside and a new trial granted:* 6 Rich. L. 56; 68 S. C. 66; 45 S. E. 562; 47 S. C. 488; 10 S. C. 493. *This is an action for the recovery of specific real property:* 12 Rich. L. 200; 13 Id. 172; 42 S. C. 138.

*Mr. D. W. Robinson,* contra, cites: *This is an action for damages for trespass and to try titles:* 70 S. C. 373; 71 S. C. 327. *In such an action plaintiff may recover actual damages for a trespass not wilful:* 80 S. C. 49; 84 S. C. 36.

March 18, 1911. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. This was an action for damages for trespass. The plaintiffs and the defendant, Mrs. Lydia A. Dempsey, own adjoining lots, fronting on Main street, in the city of Columbia. The dividing line runs approximately east and west. The defendant's lot lies north of the plaintiffs'. The trespasses alleged consisted in removing part of a fence between the lots and building a brick wall,

which enclosed a part of the plaintiffs' lot, and in digging and plowing up the soil thereof. The real controversy was as to the location of the line. Mrs. Dempsey admitted that the brick wall, which extends from the street to a point opposite the back end of her house, was built by her orders, and contended that it was entirely on her side of the line. She testified that it was built within the line of an old fence which had enclosed her lot since 1879; and although she did not plead adverse possession, she was given the benefit of that plea by the Court in the charge; she also testified that her house was built about twenty inches from the line in dispute. There was testimony that the foundation of her house was at right angles to Main street; and that the brick wall complained of was from eighteen to twenty-seven inches from it. There was also testimony that the brick wall was not only not straight in itself, but also that its general course was not on a projection of the line of the old fence from the west end of it, which, according to some of the witnesses, would run under the foundation wall of defendant's house and intersect Main street several feet north of the point where the brick wall intersects it.

The complaint alleges several trespasses at different times. The defendant, C. M. Dempsey, admitted that he had gone upon plaintiffs' lot and cut down the weeds and plowed it up; also, that he had built a trellis on it for vines to run on opposite a window in defendant's house. Mrs. Dempsey admitted that she had planted tomatoes under that trellis. These trespasses were admitted to have been upon parts of plaintiffs' lot not claimed by defendant.

At the conclusion of the evidence, defendant's attorney, treating the several trespasses alleged in the complaint as several causes of action, moved for the direction of a verdict in favor of Mrs. Dempsey on the whole case, and also as to the trespasses on those parts of plaintiffs' lot not claimed by her. It will be seen from the foregoing statement of the testimony that there was no

error in refusing both motions. While there was no testimony that Mrs. Dempsey directly ordered or ratified the trespasses of her husband in cutting down the weeds and plowing up the lot, there was testimony from which a reasonable inference could have been drawn that, in doing so, he was acting as her agent, and for the benefit of her residence. But she admitted planting tomatoes under the trellis which he had built. Moreover, as Mr. Dempsey testified that he committed these trespasses under the supposition that plaintiffs would not object to his doing so, and as the jury found no damages against him, we must assume that they did not take them into consideration in assessing damages against Mrs. Dempsey.

The Court submitted the following issues to the jury, whose answers appear after each: "1. How far south from the southern wall of defendant's residence does the true line between plaintiffs and defendant run? A. Eighteen inches; 2. Has Lydia A. Dempsey trespassed to the south of that line? A. Yes; 3. Has C. M. Dempsey trespassed to the south of that line? A. No. If you find that he has, was his act of trespass done wilfully? A. —; 4. If you assess damages for such trespass, against whom and how much? A. Lydia A. Dempsey, five hundred dollars."

Appellant contends that, under section 283 of the Code of Civil Procedure, it was error to submit issues to the jury. So much of that section as is pertinent is as follows: "In every action for the recovery of money only, or specific real property, the jury, in their discretion, may render a general or special verdict. In all other cases, the Court may direct the jury to find a special verdict in writing, upon any or all of the issues; and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon." Appellant erroneously assumes that this is an action for the recovery of specific real property. It

is an action for damages for tresspass on real estate. But if it were an action for the recovery of specific real property, it does not follow that the Judge could not submit issues to the jury and direct a written finding thereon, for the section above quoted expressly provides that *"in all cases,* (he) may instruct them, if they render a general verdict, to find upon particular questions of fact." Now, in this case, they did render a general verdict, to wit: the verdict for $500.00 damages, which, without the issues, would have been the only verdict found. But that would have left the defendant in a much worse plight than we find her; for, under the pleadings and evidence, (but for the admission of plaintiffs' attorney in the Court below that plaintiffs did not claim any land north of the foundation wall of her house) a general verdict for damages might have been construed as finding title in plaintiffs up to a line which runs under the foundation wall of her house, and with that admission, such a verdict might be construed as finding title in plaintiffs up to the wall of her house. So that, instead of being prejudicial, we think the submission of the issues was decidedly beneficial to the defendant.

Appellant contends further that, as both parties claim the line to be straight, and both admit that the southern wall of the house is not parallel to the line claimed by either party, it was error to submit the first issue. There is at least one mistaken assumption in this contention. The plaintiffs allege in the complaint that their lot is a rectangular parallelogram, and there was testimony tending to prove that allegation, and also that the line of the southern wall of defendant's house was at right angles to Main street.

It is also contended that the verdict is too indefinite, because it does not specify which part of the southern wall of the house was meant—whether the foundation wall, the weatherboarding or the eaves. The testimony shows clearly that all measurements were made from the foundation, and the verdict can be referred

to no other wall. This would naturally have been inferred, if it had not been made clear otherwise.

Appellant further contends that a line eighteen inches from and parallel to the southern wall of the house would, if projected to the back line, cut off several feet of plaintiffs' lot to defendant, which defendant does not claim. We presume the plaintiffs may be induced to keep it. But we do not understand that there was any contention or dispute about the line west of the back end of defendant's house—at any rate, none is shown by the testimony. The verdict must be construed as locating the line only at the point of dispute. It makes no difference that the result may be a crooked line, where both parties claim it to be straight. Such changes frequently occur as the result of adverse possession, as well as for other causes.

On motion of defendant, the Court reduced the verdict for damages to $200.00, which appellant still contends is excessive. But, as there was testimony to support the verdict, we decline to review the action of the Court below.

Affirmed.