12859

JOINER v. BeVIER ET AL.
(152 S. E., 652)

March, 1929. Affirmed as to plaintiff and reversed as to defendant.

*Messrs. L. D. Lide, Ed. C. Mann,* and *Lide & Felder,* for appellants,

*Messrs. William C. Wolfe,* and *Joseph A. Berry,* for respondent,

March 18, 1930.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

There are two appeals in this cause. The main one is by the defendants from an order of the presiding Judge as to the verdict rendered by the jury. The other is by the plaintiff from the order settling the case for appeal. The case is rather peculiar, for the reason that the plaintiff, who lost his cause before the jury in the lower Court, is the respondent here, while the defendants, who won the cause before the jury, are the appellants in the main appeal.

The appellants bought from certain parties a bottling plant in the City of Orangeburg. The respondent, Joiner,

district manager of the company, was very active in bringing about the sale. The appellants agreed to pay as purchase price the sum of $11,000, $5,500 of which was to be paid in cash. The cash payment was made and notes for the balance of $5,500 were executed and delivered; the notes being secured by a chattel mortgage of the property purchased. The sellers immediately transferred the notes and mortgage to the respondent. The amounts due on the notes, secured by the mortgage, were not paid according to the tenor of the obligations, and the respondent proceeded by an action in claim and delivery to recover the possession of the mortgaged property. He alleged that the principal sum of $5,500, together with interest and attorney's fees, were due him by the appellants; and that the mortgaged property detained from him was of the value of $6,000; and he asked for damages for the detention of the property the sum of $2,000. The mortgaged property was delivered to the respondent by virtue of the undertaking he gave, the appellants not requiring the return of the property to them.

In their answer, the appellants charged the respondent with fraud in the transactions pertaining to the sale of the bottling plant. They charged that Joiner was interested in the sale of the plant to them, and induced them to make the purchase; that he represented that there were in the plant, connected therewith, and owned by it, 4,800 cases filled with 9-ounce Nehi bottles, and 196 cases and bottles filled with manufactured Nehi therein, making a total of 4,996 cases with bottles therein; that the representations as to the number of bottles were false and fraudulent, since less than 1,100 cases and bottles altogether were connected with the plant, making a shortage as to the bottles and cases of more than 3,700 cases and bottles. They further said that, because of the shortage in the cases and bottles, they were unable to supply their trade promptly and efficiently, and sustained great loss in their business operations, and had to buy bottles and cases which were short, for the purpose of carrying on

the business. The appellants also asserted that the respondent refused their demand to make good the shortage of cases and bottles, or credit their notes and mortgage with the value thereof, which would have been about sufficient to discharge the mortgage debt; and that the respondent, when the appellants did not, and could not, under the circumstances, pay the mortgage debt, threatened to put the appellants out of business and cancel their rights to bottle Nehi and Chero Cola, certain proprietary soft drinks, and that the acts and conduct of the respondent ruined and destroyed their business. By way of counterclaim, the appellants demanded the cancellation of the notes and mortgage held by the respondent, the return of the property seized by him, and that he pay as damages the amount of $22,500.

The trial of the case took place in the Court of Common Pleas for Orangeburg County before his Honor, Circuit Judge William H. Grimball, and a jury. So far as the record here discloses, things went along smoothly in the trial until the jury brought in their verdict. The trouble was occasioned by the form of the verdict rendered, which often happens in claim and delivery actions, although Mr. Justice Cothran made very clear in *Wilkins v. Willimon,* 128 S. C., 509, 122 S. E., 503, the proper forms of verdicts in such cases. The Circuit Judge endeavored to get the jury to follow the instructions given in the *Wilkins case,* but he found some difficulty, it seems, in getting the jury to co-operate with him.

In order to assist the jury in preparing and returning their verdict, the trial Judge furnished them with two sheets of paper with certain questions asked thereon for the jury to answer, and the form of the verdict to be used. To make matters clear, we have numbered the questions submitted to the jury, although they were not so numbered on the sheets given them. One of the forms was to be used in case the verdict was in favor of the plaintiff, and the other in case the verdict was for the defendants.

The form submitted, if the verdict was in favor of the plaintiff, was as follows:

(1) "Were there in the bottling plant and territory on February 2, 1927—approximately 4,800 cases of empty Nehi bottles?"

(2) "If not, then how many cases of empty Nehi bottles were in the plant and territory on February 2, 1927?"

(3) "Was the plaintiff, R. A. Joiner, guilty of actionable fraud?"

(4) "If the last question be answered 'yes' then what is the amount of the actual damages of defendants?"

"We find for the plaintiff, R. A. Joiner, the right to the possession of the property described in the complaint, the value of which is assessed at ———— Dollars.

"Foreman."

On the sheet directed to be filled out by the jury, if the verdict was in favor of the defendants, the same questions, as stated above, were asked, and this form of verdict was written:

"We find for the defendants, J. C. BeVier and Rex H. Wunderlich, the recovery of the possession of the property described in the complaint the value of which is assessed at ———— —Dollars, together with ———— dollars damages for the wrongful taking and detention thereof by the plaintiff."

After the jury had been out for several hours, the Court was informed that they desired certain information, and the record shows the following to have occurred:

"The Foreman: We want to ask some questions. We want to ask if we have to answer all of the questions on either side if we agree with the plaintiff or the defendants.

"The Court: I want you to answer those questions no matter whom you find for.

"The Foreman: Have we got to answer every one?

"The Court: It depends on how you answer the first one whether or not you answer those. If you answer the first question 'yes' there is no use to answer the others. If you

answer the first question 'no' then go on and answer the next question, and so on."

When the verdict was returned to the Court, the first question was answered "No"; the second question "1,621 Crates"; the third question "Yes"; the fourth question "$5,- 500.00." The verdict was in this form:

"We find for the defendants, J. C. BeVier and Rex H. Wunderlich, the recovery of the possession of the property described in the complaint, the value of which is assessed at $5,500.00 Five Thousand Five Hundred Dollars, together with ———— Dollars damages for the wrongful taking and detention thereof by the plaintiff."

Between the form of the verdict and the signature of the foreman on the sheet of paper used appeared "Total $5,- 500.00."

When the verdict was published, Judge Grimball remarked "that, 'Total $5,500.00' is no part of the verdict." The attorneys argued as to the meaning of the verdict. Finally, the Judge decided to send the jury back to their room, and gave them the following instructions:

"Mr. Foreman and gentlemen of the jury: All I can tell you at this time is that this is a verdict in a claim and delivery suit. If you find for the defendants, your verdict should be: 'We find for the defendants, J. C. BeVier and Rex H. Wunderlich the recovery of the possession of the property described in the complaint, the value of which is assessed at,' then write in what it is assessed at, together with so many dollars—from one dollar up to the amount claimed 'damages for the wrongful taking and detention thereof by the plaintiff.' If you intend to find no damages for the wrongful detention thereof by the plaintiff, then leave that place blank. If you intend to find damages for the wrongful taking and detention thereof write out the amount of damages in there. But if you intend to find no damages for the wrongful detention, leave that blank. But what you have written here, 'Total $5,500.00,' is not a part of the

verdict at all. It does not mean anything in a verdict in a claim and delivery case. You understand what I mean. So I am going to ask you to take it back to your room and come back with it written in accordance with what your verdict really is. I cannot tell what your verdict is in this form."

After some more conversation, engaged in by the foreman of the jury, one of the attorneys, and the presiding Judge, upon request of the foreman that the Judge explain his instructions again, the Court said this:

"Here it is. That last paragraph. You have written there that you find for the defendants. That is all right. Then you write what the property is assessed at. That is written out. That is all right. Now, the next thing, there is a place I left blank, 'together with so many dollars for the wrongful taking and detention thereof by the plaintiff.' You gentlemen can find no damages if you want to for the wrongful taking and detention thereof by the plaintiff, or you may find damages for the wrongful taking and detention thereof, if any, but whatever verdict you find has to be written in there. If it is no damages, leave that space blank. If you find any damages put it in. Now you have down here at the bottom, 'Total $5,500.00.' That does not belong in the verdict at all. It does not mean a thing. I want you to go back and scratch that out, that 'Total $5,500.00' because it means nothing. If you find any damages for the wrongful detention and taking of the property, fill it out in words and not figures in the blank space left there. If you don't find any damages just leave that space blank. You see what I mean."

Following this, counsel for plaintiff-respondent made this statement:

"Your Honor, they have found it blank already. They have done just what your Honor instructed them to do in the matter of damages. It is blank now. They found it blank already."

And the Judge in reply thereto, and addressing the jury, said this:

"I am giving it to them with my instructions. If you mean blank, leave it blank."

The jury retired, as directed by the Court, and in about three minutes returned to the courtroom, and their verdict in the following form was published and spread upon the records of the Court:

"Were there in the bottling plant and territory on February 2, 1927, approximately 4,800 cases of empty Nehi bottles? No.

"If not, then how many cases of empty Nehi bottles were there in the plant and territory on February 2, 1927? 1,621 crates.

"Was the plaintiff, R. A. Joiner, guilty of actionable fraud? Yes.

"If the last question be answered 'yes,' then what is the amount of the actual damages of defendants? $5,500.00.

"We find for the defendants, J. C. BeVier and Rex H. Wunderlich, the recovery of the possession of the property described in the complaint, the value of which is assessed at $5,500.00 Five Thousand Five Hundred Dollars, together with Five Thousand Five Hundred Dollars damages for the wrongful taking and detention thereof by the plaintiff.

"T. S. Smoak, Foreman."

After the receipt of this last verdict, the respondent moved for a new trial generally. The Court seems not to have passed directly upon this particular motion, but we assume from the order that was made, that motion was refused; certainly, it was not granted. The Judge made the following order:

"In this case I have heard counsel on both sides. The motion is made by the attorneys for the plaintiff for a new trial. In the case of *Wilkins v. Willimon*, 128 S. C., page 509, the Supreme Court has clearly laid down the forms of verdicts and judgments entered thereunder in claim and delivery cases. In the present case before me, after deliberating for some hours, the jury returned with a verdict as follows:

'We find for the defendants the recovery of the possession of the property described in the complaint, the value of which is assessed at $5,500.00, together with blank dollars damages for the wrongful taking and detention thereof by the plaintiff.' Under that, and above the signature of the foreman, were written the words 'Total $5,500.00.' That verdict was received by the Clerk of Court. I was of the opinion that the words 'Total $5,500.00' were not part of the verdict and the instructions which I gave the jury at that time are part of the record. The jury went, under my instructions, back to their room, and returned, having scratched out the words 'Total $5,500.00' and with the verdict in the following words: 'We find for the defendants the recovery of the possession of the property described in the complaint, the value of which is assessed at $5,500.00 together with $5,500.00 damages for the wrongful taking and detention thereof by the plaintiff.'

"After deliberating on this matter, and hearing arguments by counsel, I am of the opinion that the rights of the parties were crystalized and fixed when the Clerk of the Court received the first verdict. In claim and delivery cases the verdict of the jury is first received, and then as laid down in the *Wilkins v. Willimon case,* under Section 600 of the Code, the judgment is entered by the Court upon the verdict brought in by the jury. It is now my duty to render judgment on the verdict of the jury.

"It is further ordered and adjudged and decreed, that the defendants recover of the plaintiff the possession of the property described in the complaint, or in case delivery can not be had, for its value $5,500.00, together with no damages for the wrongful taking and detention thereof by the plaintiff."

It is from this order that the defendants have appealed. By their three exceptions, they contend, briefly stated, that the trial Judge erred in making the order for the reasons (1) that the verdict, as first rendered, showed that the jury

intended to award the defendants not only the recovery of the property, or its value, but also damages in the sum of $5,500 for the wrongful taking and detention by the plaintiff; (2) that it was proper for the jury to be sent back to correct the error in the form of the verdict; and (3) that the verdict, as finally corrected and returned, should not have been declared ineffective. Even more shortly stated, the appellants insist that they received at the hands of the jury a verdict for the property, or its value and for damages in the sum of $5,500, and that judgment in their favor on that verdict should be entered accordingly.

While the appeal here may not directly question the statement of the presiding Judge that it was his "duty to render judgment on the verdict of the jury," we do not think the case of *Wilkins v. Willimon,* referred to in the Judge's order, is authority, as he thought, for his declaration. In the *Wilkins case,* Mr. Justice Cothran, speaking for this Court, went fully into the matter of the proper forms of verdicts to be rendered in claim and delivery actions. After setting out the verdicts to be returned under certain conditions, under Section 542 of Volume 1 of the Code, 1922, he then pointed out how judgments on these various verdicts should be entered up under Section 600 of the same volume of the Code. He did not hold, and we are sure he did not intend to hold, that, when the verdict in a claim and delivery suit was rendered, the presiding Judge must then proceed to make an order rendering judgment on the verdict of the jury. The judgment in claim and delivery cases, as in other cases, is entered up by the Clerk of the Court at the proper time.

The trial Judge in the case at bar had the right to set aside entirely any verdict rendered by the jury and to order a new trial generally on any of the usual and recognized grounds. He had the power also to order a new trial *nisi.* It was within his province to grant the plaintiff a new trial, conditioned upon the refusal of the defend-

ants to remit from the verdict all or part of the damages found in their favor. But none of these powers he exercised. The order made in this case does not come within the class of orders mentioned.

The order, appealed from, had the effect of declaring void the amendment of the verdict .(what has erroneously been referred to as the "second verdict"), and construing the verdict without the amendment (wrongly termed the "first verdict") to have been solely for the recovery of the property, or its value, by the defendants, without damages in their favor.

In passing upon the questions involved in this appeal, we have the benefit of the recent decision of this Court in the case of *Lorick & Lowrance v. Walker*, 153 S. C., 309, 150 S. E., 789, an advantage which the presiding Judge in the lower Court did not have, since the opinion in that case was not handed down until after the trial of this cause. Some conclusions of the *Lorick case*, which we again approve, are very pertinent here, and are as follows:

(1) A verdict should be certain and import a definite meaning free from ambiguity.

(2) Before the final discharge of a jury from their consideration of a cause, the trial Judge has the power to require reconsideration by the jury when the verdict is clearly erroneous as to form.

(3) A jury's verdict should be upheld when it is possible to do so and carry into effect what was clearly the jury's intention. When the verdict is so confused, however, that it is not clear what the jury intended to do, the Court should order a new trial.

As already indicated, we are of the opinion that only one verdict was rendered by the jury in this case. There were not two verdicts. The paper first returned to the Court as the verdict was the same paper presented to the Court the second time. There were some changes in the wording of that paper made by the jury, as directed by the Judge.

As it appears from the authority quoted, the trial Judge had the right, when he thought there was some error in the form of the verdict, to require the jury to reconsider their verdict and make such correction as was necessary to make clear the finding they intended to make.

The pivotal question for our determination is this: Was the verdict so certain that it imported a definite meaning free from ambiguity? To answer this question, we shall undertake to show that it is entirely clear to us what the jury intended to find.

The main charge to the jury is not in the record. There is no appeal on the part of respondent from the judgment in favor of the appellants, and we must assume that there was no question as to the correctness of any instructions the trial Judge gave the jury in his main charge. Following that assumption, we must assume that he charged the jury that, if they found the respondent was guilty of actionable fraud, and if they also found that the appellants were entitled to a return of the property, then the appellants were likewise entitled to such damages as were suffered by them because of the wrongful taking of the property by the respondent. And we must also assume that the jury were charged the correct principle of law that the wrongful taking of the property by the respondent from the appellants entitled the appellants to the recovery of some amount, however small, as damages therefor. The questions submitted to the jury indicated clearly that they were instructed by the Judge along the lines mentioned. In answer to those questions, the jury, in their first consideration of the case, answered positively that the appellants received only 1,621 crates and bottles therein, when they were entitled to receive 4,800 crates and bottles therein. In answer to the plain and direct question, "Was the plaintiff, R. A. Joiner, guilty of actionable fraud?" the jury replied, "Yes." Following that answer, they answered the last question as to the amount of actual damages sustained by the defendants by writing in the amount of $5,-

500. These special findings showed without doubt that the jury had concluded that the respondent was guilty of actionable fraud, and by such conduct *he damaged the appellants in the sum of $5,500.*

The general verdict written underneath the questions and answers was clearly in favor of the appellants for the return of the property. This naturally followed the answers to the special inquiries. The only inconsistency between the general verdict and the special findings was the failure of the jury to insert in the general verdict the amount of damages found in favor of the appellants, if the jury intended to find such damages. The very fact that the jury had expressly answered the question relating to damages in favor of the appellants to the extent of the sum of $5,500 is rather convincing that the failure to insert in the general verdict that amount was an inadvertent omission on the part of the juror who wrote the verdict.

By the terms of Section 542 of Volume 1 of the Code of 1922, the Court had the right, even when the jury was directed to "render a general verdict," to direct the jury "to find upon particular questions of fact, to be stated in writing." Under Section 543, Id., it is provided:

"Where a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter, and the Court shall give judgment accordingly."

Mr. Justice Gage, speaking for this Court, has said this:

"The law provides: 'In all  *  *  *  cases' the Court may instruct the jury 'to find upon particular questions of fact.' Code of Procedure, § 321 [now Sec. 542]; *Manson v. Dempsey,* 88 S. C., 193, 70 S. E., 610.

"The special verdict is the premise; the general verdict is the conclusion; the former controls the latter, if the two shall be inconsistent. Code, § 322 [now Sec. 543].

"In our opinion, therefore, when the Court had, of right, ordered a special verdict, and in a case of peculiar need for

such a verdict, the jury ought to have been required to find the special verdict; and the refusal to do so cast doubt upon the logical sequence of the general verdict." *Palmetto Fertilizer Co. v. Railroad Co.,* 99 S. C., 187, 83 S. E., 36, 38.

Under that authority, it must be plain that the special finding of fact that the appellants were entitled to damages in the sum of $5,500 controlled as against the finding in the general verdict that the appellants were entitled only to "blank" dollars as damages.

The words "total $5,500.00" written on the paper do not convey to our minds the idea that the jury only intended that the appellants should receive $5,500 and no more. We think to the contrary that the intention was for the appellants to recover the property, and, in addition thereto, to receive as damages the sum of $5,500. It is clear from the language of the general verdict that the property was to be awarded to the appellants. The jury assessed the value of that property at $5,500. They had before them testimony that the appellants had paid $5,500 cash on the property, and had given their notes for the remaining $5,500. Their finding that the respondent was guilty of fraud undoubtedly caused them to feel that the appellants were entitled to be fully reimbursed for the fraud committed. The appellants claimed damages in the sum of $22,500, a little more than double the amount they had agreed to pay the respondent. We think the words "total $5,500.00," were written there by the jury to let the Court know that they thought the appellants should have the property, and, in addition thereto, the sum of $5,500. In this way, the jury were giving the appellants the property, valued at $5,500, and a further sum of $5,500, making a total in property and in money of the sum of $11,000.

But, if we are in error as to what the words "total $5,500.00" may have meant, or may have been intended to mean, it is even more clear from the action of the jury in amending their verdict, when they were called upon to make

it clearer, that they desired all the time to render a verdict in favor of the appellants for the property and for $5,500 damages.

A careful reading of the instructions and directions given by the presiding Judge, just before he sent the jury back to their room, will show that the Court was very clear in the language he used, and we do not see how the jury could have possibly been misled by the directions then given. We call attention to some of these expressions. The very first thing the Judge said was this: "That 'total $5,500.00' is no part of the verdict." Referring to the blank place left for the insertion of damages, he told them to write "from one dollar up to the amount claimed 'damages for the wrongful taking and detention thereof by the plaintiff.' If you intend to find damages for the wrongful taking and detention thereof, write out the amount of damages in there. But if you intend to find no damages for the wrongful detention, leave that blank." After the last colloquy with the attorney for the respondent, the final words spoken to the jury were these: "If you mean blank, leave it blank."

The general verdict, as finally amended, corresponded exactly with the special finding that the appellants had been damaged by the actionable fraud of the respondent in the sum of $5,500.

The fact that the jury only took about three minutes to correct the verdict seems to have impressed the presiding Judge with the idea that they had misunderstood, after all, his instructions. We are inclined to the opposite view. After several hours of deliberation, the jury had come to the conclusion as shown by their answers to the questions submitted to them that the respondent was guilty of fraud, that the appellants should have the property, and that the respondent should pay the appellant in addition $5,500 as damages. The member of the jury who filled in the verdict had overlooked inserting in the proper place the damages intended to be awarded. When that fact was emphatically called to the at-

tention of the jury by the Judge, the only thing for the jury then to do, if they intended to award $5,500 damages, was to have one of their members write that amount in the proper place. It did not take near three minutes to perform. this little task. Their minds had already been made up. There was no need for further consideration. The general verdict, as at last returned, agreed absolutely with the answers to the questions the jury were directed to answer.

By Sections 542 and 543 of Volume 1 of the Code, the appellants had a verdict in their favor for the property, or its value, and $5,500 as damages. By the amended verdict, without regard to the Code provisions, the appellants had the same verdict.

We are not concerned here with the justice of the verdict, about which respondent's counsel have so earnestly argued. The power to correct unjust verdicts in cases of this kind is not left to us under the Constitution of our State. A jury's verdict should be upheld, when it is possible to do so, and carry into effect what was clearly the jury's intention. *Lorick & Lowrance v. Walker, supra.* It is our duty to enforce a verdict, not to make it.

As to the appeal from the order settling the case : The respondent, in the appendix, has set forth what he wished to appear as a part of the transcript of record, which was refused by the trial Judge. It contains a synopsis of evidence and the grounds of the motion for a new trial on the part of the respondent, much of which is a repetition of other matter appearing in the transcript. There was no need of the repetition. The new matter was not necessary for a proper determination of the questions involved in the appeal, which only related to the verdict rendered by the jury. We see no error in the order of the Judge refusing the amendments to the transcript of record, offered by the respondent.

The judgment of this Court is that in the main appeal on the part of the defendants that the order appealed from be,

and the same is hereby, reversed; and that the order appealed from by the plaintiff be, and the same is hereby, affirmed.

Mr. Chief Justice Watts and Messrs. Justices Cothran, Stabler and Carter concur.