LOCKEMY, C.J.:
*513 **284 In this construction defect case, Marick Home Builders, LLC (Marick) and Rick Thoennes appeal several of the trial court's orders arguing the trial court erred by (1) failing to give certain jury charges; (2) failing to grant their directed verdict motions; (3) improperly limiting their closing argument; (4) amalgamating the interests of several defendants; (5) failing to require Respondents to elect a remedy; and (6) failing to properly set off settlements Respondents received prior to trial. We affirm in part and reverse in part.
FACTS
In 2002, Bostic Brothers Construction, Inc. (Bostic) began construction as the general contractor on Stoneledge, a townhouse community on Lake Keowee. Bostic marketed the properties as "quality construction" and "maintenance free." Bostic stated, "The quality and attention to detail of the cedar and stacked-stone homes are just as breathtaking as the views." Bostic also noted "Your homeowner[']s association dues cover both maintenance of the grounds and the exterior of your home leaving you more time to enjoy the lake and surrounding attractions." Several of the units were sold in 2003, but the attempts to sellout were "erratic at best."
By late 2004, Bostic was having difficulties finishing other jobs and had to cease operations at Stoneledge. According to property owners at Stoneledge, when Bostic left in 2004, there were "a number of issues." Steven Taylor, a property owner at Stoneledge, testified "[i]t was like a ghost town." He stated property owners were concerned about whether electricity bills were being paid, whether the septic system would work properly, and who was responsible for keeping the common areas landscaped. Taylor testified Bostic had completed the exteriors of the remaining units, but had not completed the interiors when it abandoned the project.
In 2005, IMK Development Company purchased the property from Bostic, and Marick Home Builders, LLC took over the building responsibilities for Stoneledge. Marick's site superintendent, Nathan Hornaday, testified he walked through the **285 unsold units and noted existing damage and what needed to be fixed. According to Hornaday, the exterior of the units, including the roof, porches, decks, and siding were installed in all of the homes and only two or three units needed doors or windows installed.
Hornaday testified that when he arrived on the Stoneledge site, he observed leaks around the porches and decks. Taylor testified he too noticed leaks on his porch and deck. Additionally, Hornaday stated he observed water damage inside the unfinished units, not associated with the porches. He believed that the water damage was the result of broken or missing windows and doors. Hornaday alerted Marick, and one of its principals, Rick Thoennes, about the issues. Marick pulled permits for the unfinished units to complete construction. Marick also hired Coleman Waterproofing to rectify the leaks on the decks and porches by applying a waterproof coating to the concrete. According to Marick, the waterproofing appeared to rectify the issue.
In 2005, IMK created a homeowners association (HOA) for Stoneledge. At that time, the HOA Board was comprised of IMK representatives, including Thoennes. The HOA conducted regular business, but the homeowners did not have much interaction with the Board. The HOA performed maintenance to the units, but progress was sometimes slow. The IMK/Marick representatives of the Board turned over the HOA to the homeowners in late 2008.
In the spring of 2009, the homeowner-controlled Board began receiving complaints of leaks on the decks and porches. Some homeowners also noticed water running through the crawl-space of their homes during heavy rains. The HOA completed destructive testing on the porches and decks and found significant damage. The HOA also found hidden rot caused by water intrusion to structural columns, and homeowners began reporting interior damage caused by water infiltration from the roof.
*514 In February 2010, the HOA filed an action against Bostic, IMK, Marick, and other development entities, subcontractors and individuals. The HOA settled with some defendants, but went to trial against Bostic, IMK, Marick and the original IMK/Marick board members, alleging negligence, breach of **286 implied warranty of workmanlike service, breach of implied warranty of habitability, and breach of fiduciary duty.
At trial, the HOA requested the jury return a verdict for $6,309,197 for the full amount required to bring the damaged buildings up to the quality at which they were marketed. After deliberations, the jury returned a verdict in favor of the HOA for a total of $5,000,000: $3,000,000 on the negligence cause of action against Marick and Bostic, $1,000,000 on the breach of implied warranty cause of action against Marick and Bostic, and $1,000,000 for the breach of implied warranty cause of action against Marick. Following post-trial proceedings to allocate fault and setoff settlement funds, the trial court entered revised judgments. This appeal followed.
LAW/ANALYSIS
A. JURY CHARGES
"An appellate court will not reverse the trial court's decision regarding jury instructions unless the trial court committed an abuse of discretion." Stephens v. CSX Transp., Inc. , 415 S.C. 182, 197, 781 S.E.2d 534, 542 (2015) (quoting Cole v. Raut , 378 S.C. 398, 404, 663 S.E.2d 30, 33 (2008) ). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or is not supported by the evidence." Id. (quoting Cole , 378 S.C. at 404, 663 S.E.2d at 33 ).
"A trial court must charge the current and correct law." Id . (quoting In re Estate of Pallister , 363 S.C. 437, 451, 611 S.E.2d 250, 258 (2005) ). "Ordinarily, a trial judge has a duty to give a requested instruction that correctly states the law applicable to the issues and evidence." Id . (quoting Ross v. Paddy , 340 S.C. 428, 437, 532 S.E.2d 612, 617 (Ct. App. 2000) ). "However, jury instructions should be confined to the issues made by the pleadings and supported by the evidence." Id ."A trial court's refusal to give a properly requested charge is reversible error only when the requesting party can demonstrate prejudice from the refusal." Id . (quoting Pittman v. Stevens , 364 S.C. 337, 340, 613 S.E.2d 378, 380 (2005) ).
"When an appellate court reviews an alleged error in a jury charge, it 'must consider the court's jury charge as a whole in light of the evidence and issues presented at trial.' " Id . (quoting **287 Keaton ex rel. Foster v. Greenville Hosp. Sys. , 334 S.C. 488, 497, 514 S.E.2d 570, 575 (1999) ). "If, as a whole, the charges are reasonably free from error, isolated portions which might be misleading do not constitute reversible error." Id. at 198, 781 S.E.2d at 542 (quoting Keaton , 334 S.C. at 497, 514 S.E.2d at 575 ). "This holistic approach to jury instructions is linked to the principle of appellate procedure that '[a]n error not shown to be prejudicial does not constitute grounds for reversal.' " Id . (quoting Ardis v. Sessions , 383 S.C. 528, 532, 682 S.E.2d 249, 250 (2009) ).
If the record does not contain any proposed jury charges, and it does not reflect that Appellant proffered any proposed jury charges, the issue is not preserved. Commerce Ctr. of Greenville, Inc. v. W. Powers McElveen & Assocs. , 347 S.C. 545, 556, 556 S.E.2d 718, 724 (Ct. App. 2001).
Marick argues the trial court erred by (1) not charging the jury that Marick could be held liable only for work it performed, (2) charging the jury on breach of implied warranty of habitability, even though that cause of action had been dismissed, (3) and failing to give its requested jury charge on the breach of fiduciary duty cause of action. We disagree.
1. Liability Charge
Marick asserts "[t]he trial court failed to charge the jury on the proper elements of negligence for a subsequent owner for original construction defects or similar limitations for breach of implied warranty of workmanlike service." The HOA, on the other hand, asserts Marick failed to preserve its argument because it did not proffer a proposed jury charge to the trial court prior to the court's charge to the jury.
*515 In Roundtree Villas Association v. 4701 Kings Corporation , our supreme court determined whether a lender, that took control of a project in lieu of foreclosure from the builder, could be held liable for negligent work by the builder prior to the lender taking title to the property. 282 S.C. 415, 418-419, 321 S.E.2d 46, 48-49 (1984). The Roundtree Villas court refused to impose liability in such a case. Id . at 422, 321 S.E.2d at 50. Instead, the court found the lender could only be held responsible for its acts of negligence in repairing any issues. Id . at 423, 321 S.E.2d at 51. "Under this cause of action the Lender ... may only be held liable for any damages proximately **288 caused by the alleged negligent repair, but not for any original damages proximately caused by the negligence of the Builder, Architect or Contractor." Id .
During trial, Hornaday, Marick's site superintendent, and Taylor, a resident of Stoneledge, each testified the exteriors of many of the Phase I units were already constructed when Marick took over the project in 2005. But, Hornaday also testified he observed water damage in unfinished units and leaks around some porches and decks. Furthermore, he acknowledged Marick pulled permits to complete construction at Stoneledge totaling $1.4 million, including some that stated the work was to "complete townhome from foundation stage."
During the charge conference, the court stated it would charge the elements of negligence. Specifically, the court stated, "I'll charge as far as the elements of damages the negligence is the cost of repairs and incidental and consequential damages." The court then noted, "Have we got any-I don't know about the duty to exercise reasonable care in making repairs." The HOA told the trial court, "That would be relevant to the claims against Marick." Marick responded, "We put the Roundtree Villas case in there, I believe." Later during the charge conference, the court noted it would charge the jury "the burden of proof is upon the plaintiff to prove not only that there was negligence, but that the named defendant or defendants were the cause of that [damage]." Again, Marick argued to the trial court it should include a charge from Roundtree Villas regarding "liability of subsequent builder making repairs." The court noted it could not find the proposed charge but Marick quoted from the charge that
One who undertakes to make repairs [sic], the defective components of a construction project is not liable for the negligence of the prior builder or contractor. The entity who assumes to make repairs to defective components is only liable for damages proximately caused by alleged negligent repair but not for any original damages proximately caused by the negligence of a builder or contractor.
The trial court declined to charge the language from Roundtree Villas because it involved a lender that took title to property, not a subsequent builder.
**289 With regard to the HOA's issue preservation argument, we find Marick sufficiently proffered its requested charge to the trial court. While there was some discussion that the charge was not included in Marick's requests sent to the court prior to the charge conference, Marick sufficiently brought to the trial court's attention the requested content of the charge, and there is a sufficient record for this court to review it. Therefore, we find this issue has been sufficiently preserved for our review.
On the merits, the trial court charged the jury the correct statement of the law in South Carolina regarding builder negligence and liability. While we agree with Marick it may have been helpful to include the language from Roundtree Villas in the charge to the jury, after reviewing the entire jury charge, we find no error under the specific facts of the case.
The trial court charged the jury on the general elements of negligence. The court specifically charged the jury "[t]he plaintiffs must also prove by a preponderance or the greater weight of the evidence that they suffered damages as a result of the defendants' breach of duty." The trial court continued by instructing the jury on proximate cause. The court instructed, "The plaintiffs must prove by a preponderance of the evidence that the damages were proximately caused by the defendants' breach" and the *516 plaintiffs must prove causation in fact "by showing that the damages would not have occurred but for the defendants' negligence." The court also charged the jury that a plaintiff must prove a builder negligently constructed a building and "the negligence or carelessness of the defendants in performing the construction work was a proximate cause of the damages sustained by the plaintiff."[1] Finally, the court instructed, "If [two] acts happened one after the other, but not related to each other, they would not be concurring causes. In that case, only one person whose negligence actually caused the injury would be responsible."
Taken as a whole, these charges adequately instructed the jury on the law of South Carolina. Marick's requested charge **290 is certainly appropriate here, but the court's charge as given instructed the jury that only the person or entity whose negligence caused the injury would be responsible. Accordingly, we affirm.
2. Breach of Implied Warranty of Habitability
Marick argues the trial court erred in charging the jury on the law of implied warranty of habitability because the breach of implied warranty of habitability claim had been dismissed prior to trial. The HOA asserts the trial court's error was harmless because no cause of action for breach of implied warranty was included on the verdict form. We agree with the HOA.
The HOA initially asserted a cause of action against the Stoneledge developers for breach of implied warranty of habitability. The trial court, however, granted the developers summary judgment on the breach of implied warranty of habitability prior to trial.
In preparing its jury instructions, the trial court stated it planned to charge the jury on four causes of action, including a charge for breach of the implied warranty of habitability. Marick then asked "Does anybody think there's a work habitability claim still out there?" The HOA responded, "Your Honor, I think that you dismissed the habitability claim by earlier order." The trial court agreed.
However, during the charge, the trial court instructed the jury,
A builder who contracts to construct a dwelling impliedly warrants that the work undertaken will be performed in a careful, diligent, and workmanlike manner. This is an implied warranty of workmanlike services, and it exists as a matter of law. The implied warranty o[f] workmanlike manner is a duty to perform the work skillfully, carefully and diligently. The work need not be performed to absolute perfection or to the personal satisfaction of either party, but it must be performed to the satisfaction of the contract. The skill required of a person providing services is the same degree of skill, efficiency and knowledge of those of ordinary skill, competence and standing in the particular trade, profession or business in which the person is working. If **291 you find the construction was defective by reason of the builder's workmanlike performance, the breach of warranty gives a plaintiff a claim for damages for the loss of his expectancy.
The plaintiffs alleged that there has been a breach of the implied warranty of workmanlike service and a breach of implied warranty of habitability. An implied warranty is one which is presumed to be included in every sale, whether the defendant actually stated the promise or not. The proper measure of damages for the breach of an implied warranty is the actual damages shown to have been sustained by the plaintiff which are the natural, direct and proximate cause of the breach of the implied warranty and which may be reasonably regarded as within the contemplation of the parties at the time [sic] the warranty as a probable consequence of the breach of this warranty.
In the court's instruction on damages for the breach of implied warranty cause of action, the trial court did not indicate a specific implied warranty, instead noting "[i]ncidental *517 damages from a breach of implied warranty may be recovered."
After the charge, Marick noted its exception to the breach of implied warranty of habitability language. Marick acknowledged the implied warranty of habitability issue was a "small one" that was "buried in other charges." After deliberating, the jury requested the trial court "provide the jury charge for breach of implied warranty of workmanlike service and [the trial court's] charge for breach of fiduciary duty." The court repeated these charges at the jury's request. After the court's recharge on the law, Marick again objected to the implied warranty of habitability reference. The trial court noted the error, but found there was no injury to Marick because the term was only mentioned one time in the section.
We agree with the trial court's assessment. The jury charge only included the phrase breach of implied warranty of habitability once; it did not define the concept or give any elements for it with respect to a separate cause of action. Further, the jury specifically requested the trial court recharge the issue of breach of warranty of workmanlike service, not mentioning the warranty of habitability. While inclusion of the phrase was error, we find Marick has failed to establish any prejudice **292 resulting from the trial court's passing references to the breach of warranty of habitability in this case.
3. Breach of Fiduciary Duty
Marick argues the trial court gave an erroneous jury charge on the breach of fiduciary duty cause of action, which essentially converted breach of fiduciary duty into a strict liability cause of action. Based on the trial court's erroneous breach of fiduciary duty charge, Marick also asserts the trial court erred by not giving its requested charge on the business judgment rule. The HOA asserts the breach of fiduciary duty claim presented in this case is controlled by our supreme court's decision in Concerned Dunes West Residents v. Georgia-Pacific Corporation , 349 S.C. 251, 562 S.E.2d 633 (2002). We agree with the HOA.
In Dunes West , a developer created a planned unit development (PUD) governed by recorded covenants and restrictions. Id . at 254, 562 S.E.2d at 635. During development, the developers constructed roads and drainage systems. Id . Subsequently, the developer discovered significant repairs to the roads and drainage systems would be necessary. Id . at 255, 562 S.E.2d at 635. Before repairing the issues, the developer sold the remaining undeveloped portions to a buyer. Id . Prior to consummating the sale, the developer deeded the roads and other common areas within the development to the property owners association (POA). Id . Pursuant to the covenants, the POA was responsible for maintaining all common areas within the PUD. Id . at 255, 562 S.E.2d at 636. The POA later sued the developer to recover the costs to repair the roads and other common areas. Id .
The court noted,
the developer of a planned unit development ... owes a fiduciary duty to the property owners association and its members, much like that owed by promoters of a corporation to investors. As such, the developer has a responsibility to insure that the common areas are in good repair at the time they are conveyed to the property owners association or to provide the association with funds sufficient to effectuate any needed repairs to those areas.
**293 Id . at 256, 562 S.E.2d at 636. "The developer of a PUD owes a duty to the POA to turn over common areas that are not substandard and that are in good repair. Failure to do so subjects the developer to liability for bringing the common areas up to standard." Id . at 257, 562 S.E.2d at 637. Under this legal framework the court found the developer liable to the POA for the road construction defects. Id .
Here, the trial court instructed the jury "The developer owes a fiduciary duty to ensure that the common areas of the development are in good proper repair at the time the developer relinquished control of the homeowners association over to the homeowners."
Marick asserts, "The charge given by the [trial] [c]ourt is not an accurate statement of the law of South Carolina, and it incorrectly *518 expresses and implies that such a duty by a developer is akin to strict liability for defects, whether latent or patent." Marick argues "there was no evidence that Thoennes or the other members of the HOA Board[ ] had any knowledge of unrepaired defects at the Project at the time control of the HOA Board was transferred to the homeowners in 2007." Marick also argues the trial court should have instead charged the jury that "the conduct of the directors should be judged by the 'business judgment rule'; and absent a showing of bad faith, dishonesty, or incompetence, the judgment of the directors will not be set aside by judicial action."
The trial court properly instructed the jury regarding the fiduciary duty a developer owes to an HOA when it controls the HOA. The HOA presented evidence that Marick knew about water infiltration issues, and even attempted to fix them prior to turning the HOA over to the homeowners. Because the circuit court properly charged the jury according to our supreme court's holding in Dunes West , we affirm.
B. DIRECTED VERDICT MOTIONS
"When reviewing a trial court's ruling on a directed verdict motion, this court will reverse if no evidence supports the trial court's decision or the ruling is controlled by an error of law." Burnett v. Family Kingdom, Inc. , 387 S.C. 183, 188, 691 S.E.2d 170, 173 (Ct. App. 2010). "When reviewing **294 the trial court's decision on a motion for directed verdict, this court must employ the same standard as the trial court by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party." Id ."The trial court must deny a directed verdict motion where the evidence yields more than one inference or its inference is in doubt." Id .
1. Breach of Implied Warranty of Workmanlike Service
"In constructing a home, a builder warrants that the home is fit for its intended use as a dwelling, that the home is constructed in a workmanlike manner, and that the home is free of latent defects." Fields v. J. Haynes Waters Builders, Inc. , 376 S.C. 545, 562, 658 S.E.2d 80, 88 (2008).
Marick argues it was entitled to a directed verdict on the breach of implied warranty claim because "[t]here was no evidence presented that Marick constructed the defective exteriors of the units." The HOA notes it did not sue Marick seeking to hold it vicariously liable for Bostic; rather, it sued Marick "for its own negligence and breaches of warranty with respect to the significant work it did in Phase 1 of Stoneledge." The HOA explains it has "not contended that Marick is a warrantor of Bostic's work."
Several homeowners testified they notified the Marick board members regarding issues with their units. The HOA also presented evidence that Marick pulled building permits detailing $1.4 million in construction necessary to complete the units in Phase 1 and perform repairs; some of this work included completing buildings from the foundation stage. This evidence was sufficient to overcome Marick's motion for a directed verdict and raised a question of fact for the jury to decide. Accordingly, we affirm.
2. Proximate Cause
"Negligence is not actionable unless it is a proximate cause of the injury." Madison ex rel. Bryant v. Babcock Ctr., Inc. , 371 S.C. 123, 146, 638 S.E.2d 650, 662 (2006). "[P]roximate cause is the efficient, or direct, cause[;] the thing which brings about the injuries complained of." Hughes v. Children's Clinic, P. A. , 269 S.C. 389, 398, 237 S.E.2d 753, 757 (1977). "The defendant's negligence does not have to be the **295 sole proximate cause of the plaintiff's injury; instead, the plaintiff must prove the defendant's negligence was at least one of the proximate causes of the injury." Madison , 371 S.C. at 147, 638 S.E.2d at 662. "Normally, proximate cause is a question of fact for the jury, and it may be proved by direct or circumstantial evidence." J.T. Baggerly v. CSX Transp., Inc. , 370 S.C. 362, 369, 635 S.E.2d 97, 101 (2006).
Marick acknowledges the existence of "limited evidence that any repairs made by Marick were defective and proximately caused damages." However, Marick argues the trial court erred in failing to grant it a partial *519 directed verdict on the negligence claim because the extent of its liability for construction defects was $250,000. The HOA asserts it presented evidence of Marick's "failure to comply with the code in performance of over $1.4 million worth of completion work; its extensive, failed efforts to repair waterproofing on the porches and decks and foundation; and its disregard of open and obvious deficiencies" its superintendent saw but did not repair, which led to damages.
The HOA's forensic engineer, Derek Hodgin testified he examined the units in Stoneledge and found a number of issues. On his first inspection of Stoneledge, Hodgin found issues with water intrusion on the decks and porches, flashing issues, and siding issues. Hodgin also testified he discovered a significant amount of damage to paneled subfloors and floor framing caused by water intrusion. Finally, Hodgin noted there were inappropriately constructed fire-rated walls which he could observe in an unfinished unit inspection.
Hodgin analyzed the plans and permits pulled in this case and determined Marick used out of date building codes when it applied for twenty-six building permits in 2005, although "there [was] really no substantial or substantive difference between the two codes ... for any of the issues" in this case. He also noted several problems with the amount of detail on the plans, and stated the builders should have contacted the architect to clarify those points.
Finally, Hodgin testified the homeowner's reports of water intrusion should have put Marick on notice to sufficiently investigate to determine the source of the water intrusion. According to Hodgin, to completely fix the issues Stoneledge **296 faces, it would require the removal of all the exterior wall material, and its subsequent reapplication using proper flashing and waterproofing details.
We acknowledge several witnesses testified the exteriors of the homes were already constructed when Marick took over at Stoneledge. We also note the HOA's expert testified a large portion of the damages would not have been any different had Marick done nothing to attempt repair. The HOA's expert testified,
Certain things wouldn't change at all. The need for fire-rated walls to be correct would not change. The need for every window to be removed and reset with proper flashing would not change. The waterproofing of the foundation walls would not change. The balcony reconstruction, I don't think would change. There may have been-you may have had some framing to salvage in the balconies in 2004. I don't know. But other than that it would be same fix.
However, Hodgin also testified Marick had a duty to properly investigate issues and make repairs as the subsequent general contractor when it knew of problems.
Marick's expert testified the repairs identified by the HOA's expert which were attributable to Marick would cost $250,000 to repair. The record does not indicate that the HOA's expert broke down his damages opinions between Bostic and Marick.
Mindful of our standard of review, we find evidence in the record to support the jury's determination that Marick was the proximate cause of Stoneledge's damages, and those damages exceeded $250,000. The most apparent evidence supporting the jury's decision are the permits for construction Marick requested, at least one of which was to completely construct a new unit. While the HOA's expert may not have taken time to delineate which damages were due to Bostic's negligence and which damages were due to Marick's negligence, we find there was evidence to support the jury's verdict. Therefore, we affirm the trial court's decision declining to grant directed verdict.
C. CLOSING ARGUMENT
"Closing arguments must be confined to evidence in the record and reasonable inferences therefrom."
**297 O'Leary-Payne v. R.R. Hilton Head, II, Inc. , 371 S.C. 340, 352, 638 S.E.2d 96, 102 (Ct. App. 2006) (quoting State v. Huggins , 325 S.C. 103, 107, 481 S.E.2d 114, 116 (1997) ). A trial court is allowed broad discretion in dealing with the range and propriety of closing argument to the jury. Id . (quoting *520 State v. Condrey , 349 S.C. 184, 195-96, 562 S.E.2d 320, 325 (Ct. App. 2002) ). Ordinarily, the trial court's rulings on such matters will not be disturbed. Id . (quoting State v. Patterson , 324 S.C. 5, 17, 482 S.E.2d 760, 766 (1997) ).
Marick argues the trial court improperly restricted its closing argument regarding the HOA's expert witness. Marick asserts there was no need to use the deposition during the trial because the expert admitted the content of his previous deposition testimony in a different case, and impeachment was therefore not necessary.
Marick made only conclusory statements and quoted the discussion between counsel and the court during the closing argument, without any citation to supporting authority. Therefore, this issue has been abandoned. See Glasscock, Inc. v. U.S. Fidelity & Guar. Co. , 348 S.C. 76, 81, 557 S.E.2d 689, 692 (Ct. App. 2001) ("South Carolina law clearly states that short, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review.").
D. AMALGAMATION (Single Business Enterprise Theory)
Marick argues the trial court's decision to amalgamate its interests with IMK was erroneous, unsupported by the evidence, and "created a multitude of problems involving the jury charges (or lack thereof), the verdict form and both judgments entered by the trial court."[2]
The amalgamation of interests theory was first addressed in South Carolina in **298 Kincaid v. Landing Dev. Corp. , 289 S.C. 89, 344 S.E.2d 869 (Ct. App. 1986) ; however, our supreme court only formally recognized amalgamation-or the "single business enterprise theory"-as a method of piercing the corporate form in the recent case of Pertuis v. Front Roe Restaurants, Inc ., 423 S.C. 640, 817 S.E.2d 273 (2018). In Pertuis , the court summarized the doctrine as follows:
where multiple corporations have unified their business operations and resources to achieve a common business purpose and where adherence to the fiction of separate corporate identities would defeat justice, courts have refused to recognize the corporations' separateness, instead regarding them as a single enterprise-in-fact, to the extent the specific facts of a particular situation warrant.
Id. at 652-53, 817 S.E.2d at 279. Noting there is nothing "remotely nefarious" in forming corporations for the purpose of shielding shareholders from individual liability, our supreme court reasoned that amalgamation "requires a showing of more than the various entities' operations are intertwined"; rather, it requires "further evidence of bad faith, abuse, fraud, wrongdoing, or injustice resulting from the blurring of the entities' legal distinctions." Id . at 655, 817 S.E.2d at 280-81.
In this case, although the trial court lacked the benefit of our supreme court's decision in Pertuis , we agree it failed to conduct any meaningful analysis supporting an amalgamation of interests. Nevertheless, our review of the record reveals evidence of a unified operation between Marick and the amalgamated parties as well as evidence of self-dealing that resulted from a blending of their business enterprises.
The threshold amalgamation issue "is an assessment of whether these entities actually operate as a single business enterprise, and thus should be treated as a single entity." Id . at 650, 817 S.E.2d at 278. Here, there was testimony Integrys Keowee and Marick were corporately affiliated under the umbrella of IMK, passed corporate funds directly between one another, and allowed individual members to operate as dual agents without distinction as to who they represented. Specifically, Integrys Keowee managing shareholder Bill Cox testified IMK was created to hold title to the Stoneledge project. "Marick Home Builders was to provide the construction at their cost, and [Integrys Keowee] provided the investment.
**299 And we did the books for IMK. And the agreement *521 was we would split the profits." Cox was a managing member of both Integrys Keowee and IMK; Integrys Keowee and Marick each owned 50 percent of IMK. IMK had no business other than the development of Stoneledge.
Cox was also a partner in Integrys Holdings, a software company. Some of the Stoneledge salespeople-representatives of IMK-were housed in the Integrys Holding office, which "made it easy for them to use our email." According to Cox, these sales reps were not IMK owners or employees, but "contractors of IMK." Marick would primarily supervise these sales people, but they were contracted through IMK, working out of the office of the Integrys Holdings shareholders. Other evidence was presented to establish that Marick and IMK shared responsibility for the management of Stoneledge's sales team.
Rick Thoennes' own testimony further established the joint nature of the Stoneledge enterprise. In attempting to explain how homeowners would report a defect with their unit, Thoennes stated:
It depends on which hat I had on that particular day. I've been-Mr. Lyles said I sold them. Somebody else said I built them, and somebody else said I'm a director on the Board. ... So I guess it depends on which hat I had. ... I didn't have the pleasure of being able to say, I'm a director now. At seven o'clock, I'm a contractor. At eight o'clock, I'm a marketing person. I didn't have that luxury.
In the eyes of the HOA members, IMK, Marick, and the individual investor parties serving on the HOA board were one and the same. Stoneledge property owner Robert White testified, "I.M.K., to me, in terms of the faces of the folks that were part of I.M.K. were Rick Thoennes and his son and Tim Roberson." White and his wife communicated with IMK regarding their "quite hefty list of punch list items."
Further, Thoennes, as Marick's principal and license holder[3] , had at least constructive knowledge of the pervasive **300 construction defects that plagued the project, but was nevertheless directly involved in IMK and Marick's marketing and sale of the units. Given that Marick's and IMK's profits were entirely dependent on IMK's ability to sell the units, their operations were clearly in pursuit of a common business purpose, albeit to the detriment of the HOA members. Accordingly, we find evidence supports the trial court's single business enterprise ruling.
E. ELECTION OF REMEDY
"Election of remedies involves a choice between different forms of redress afforded by law for the same injury or different forms of proceeding on the same cause of action." Taylor v. Medenica , 324 S.C. 200, 218, 479 S.E.2d 35, 44 (1996). "It is the act of choosing between inconsistent remedies allowed by law on the same set of facts." Id ."Its purpose is to prevent double recovery for a single wrong." Id ."Where a plaintiff presents two causes of action because he is uncertain of which he will be able to prove, but seeks a single recovery, he will not be required to elect." Adams v. Grant , 292 S.C. 581, 586, 358 S.E.2d 142, 144 (Ct. App. 1986).
Marick asserts the trial court erred in failing to require the HOA to elect a remedy because "[a]ll of the damages awarded to the [HOA] by the jury arise from the same set of facts and are not distinct to different causes of action." The HOA argues "everyone including Marick, [the HOA], and the trial court agree that the damages [the HOA] requested at trial, essentially the cost of repair, was the remedy [the HOA] sought. [The HOA] sought no other remedy.... Thus there was nothing for [the HOA] to elect."
Immediately after the jury returned its verdict, the HOA asked the trial court if the damages award was meant to be cumulative. The trial court stated, "Well, the way the Defendants have been treating it, yes, it is cumulative...." Marick did not object to the trial court's ruling that the damages would be cumulative or ask the trial court to inquire *522 as to the jury's intent behind the multiple awards. **301 Marick's failure to object to this ruling renders its election of remedies argument unpreserved. The trial court ruled that the damages the jury awarded for each of the causes of action would be added together, and that the HOA was entitled to damages for each of those causes of action. Marick failed to object to the court's decision or request the court ask the jury what its intent was in how it awarded damages. Accordingly, Marick is unable to argue on appeal the court's decision was in error. See Allegro Inc. v. Scully , 400 S.C. 33, 49 n.9, 733 S.E.2d 114, 123 n.9 (Ct. App. 2012) ("If a jury verdict form is ambiguous or unclear, the jury should be returned to the jury room in order to clarify or conform the verdict to its intent before the jury is excused.").
F. SET OFF
Section 15-38-50 of the South Carolina Code (2005) provides that, "[w]hen a release ... is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death: (1) ... it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater...."
"[W]hen a prior settlement involves compensation for the same injury for which the jury awarded damages, the right to setoff arises as an operation of law." Smith v. Widener , 397 S.C. 468, 473, 724 S.E.2d 188, 191 (Ct. App. 2012). However, when the settlement involves compensation for an injury different from the one tried to verdict, there is no set off as a matter of law. Hawkins v. Pathology Assocs. of Greenville, P.A. , 330 S.C. 92, 114-15, 498 S.E.2d 395, 407 (Ct. App. 1998). When the settlement "is argued to involve two claims, one of which involves the same injury as the claim tried to verdict and one of which does not, the circuit court must make the factual determination of how to allocate the settlement between" the claims. Smith , 397 S.C. at 473, 724 S.E.2d at 191.
At trial, the HOA requested the jury return a verdict for $6,309,197 for the full amount required to bring the damaged buildings up to the quality at which they were marketed. After deliberations, the jury returned a verdict in favor of the HOA
**302 for a total of $5,000,000-$3,000,000 on the negligence cause of action against Marick and Bostic, $1,000,000 on the breach of implied warranty cause of action against Marick and Bostic, and $1,000,000 for the breach of fiduciary duty cause of action against Thoennes and other directors.
After the jury returned its verdict, the trial court held an additional proceeding to apportion fault among the defendants. The jury apportioned 40% of fault to Marick on the negligence claim and 70% of fault to Marick on the breach of implied warranty claim. The jury was then dismissed.
The trial court held a post-trial hearing on several motions after releasing the jury. Among those motions was a motion for setoff. During the hearing on the motion for setoff, the HOA requested the court reform the jury's verdict to reflect that each cause of action supported the $5,000,000 cumulative verdict. After several motions for reconsideration, the trial court entered judgment against Marick as follows: (1) for negligence-$857,635.29; (2) for breach of implied warranty-$2,144,088.23. The trial court entered judgment against Rick Thoennes for $2,144,088.23 for breach of fiduciary duty.
Initially, Marick asserts the trial court erred in entering judgment as detailed above because "the damages awarded and the apportionment provided do not correlate with the evidence." Essentially, Marick argues the trial court's final entry of judgment does not correlate with the jury's verdict. We agree.
It appears the trial court amended the jury's verdict to find that each cause of action independently supported a $5 million verdict. In doing so, the trial court invaded the province of the jury. See Joiner v. Bevier , 155 S.C. 340, ----, 152 S.E. 652, 657 (1930) ("It is [the judiciary's] duty to enforce a verdict, not to make it."). Therefore, we find the jury's verdict, and its allocation of damages to the three separate causes of action should be reinstated.
*523 The question then becomes how the court should allocate the setoff Marick and Thoennes are entitled to based upon the settlement the HOA received prior to trial. Thoennes' fiduciary duty to the HOA was the result of his position on the Board of the HOA. Based on the record, it does not appear any Board members settled with the HOA prior to trial. Therefore, **303 none of the settlement proceeds should be set off against Thoennes' liability for breach of fiduciary duty because none of the settlement proceeds would have included any amount for damages resulting from a breach of fiduciary duty. Accordingly, Thoennes is responsible for the $1 million award for breach of fiduciary duty, subject to any claims he may have for contribution from any other defendants.
The remaining $4 million verdict should be set off by the amount of the prior settlements. After deducting the value of the settlements, this would leave a $2,144,088.23 judgment to allocate between the negligence and breach of implied warranty causes of action. Because the jury awarded $3 million to the negligence cause of action and $1 million to the breach of implied warranty cause of action, we believe it would be proper to allocate three-fourths of the remaining judgment to the negligence cause of action and the remaining one-fourth to the breach of implied warranty cause of action. This allocation would mean $1,608,066.17 would be allocated to the negligence cause of action and $536,022.06 would be allocated to the breach of implied warranty cause of action.
Applying the apportionment statute and the apportionment amounts the jury determined at trial, Marick would therefore be responsible for $643,226.47 for the negligence claim and $536,022.06 for the breach of implied warranty claim, subject to any claims it may have against Bostic for contribution. See S.C. Code Ann. § 15-38-15 ("In an action to recover damages resulting from ... damage to property ... if indivisible damages are determined to be proximately caused by more than one defendant, joint and several liability does not apply to any defendant whose conduct is determined to be less than fifty percent of the total fault for the indivisible damages.... A defendant whose conduct is determined to be less than fifty percent of the total fault shall only be liable for that percentage of the indivisible damages determined by the jury or trier of fact.").
CONCLUSION
Accordingly, we affirm in part, reverse in part, and remand for entry of judgment consistent with this opinion.
HUFF and McDONALD, JJ., concur.

The trial court instructed the jury on multiple other occasions that a defendant is only liable for damages for which the defendant was the proximate cause; however, for the sake of brevity, we list only a sampling of those charges.

Plaintiffs also sued Marick and Rick Thoennes-Marick's principal and license holder-directly for their active fault. It appears that only Larry Lollis, a passive investor in IMK through Integrys Keowee Development, was actually impacted by the trial court's amalgamation of the interests with respect to the breach of fiduciary duty claim. Lollis, Cox, and Integrys Keowee are not parties to the appeal.

Rick Thoennes and his son, Rick III, started Marick home builders together. When Marick Home Builders ceased operations and became insolvent in 2009, Thoennes and his son started a new home building corporation, M Group. Rick Thoennes was the license holder for both Marick Home Builders and M Group.